MARGIE GILBERT, ADMINISTRATRIX, APPELLANT, v. JESSE C. BRYANT, APPELLEE.

FILED DECEMBER 29, 1933.   No. 28655.

*Baker, Lower & Sheehan* and *Schiefelbein & Donato,* for appellant.

*Baylor & Tou Velle, George Healey* and *H. A. Bryant,* contra.

Heard before GOSS, C. J., ROSE and PAINE, JJ., and BEGLEY and HORTH, District Judges.

ROSE, J.

This is an action against Jesse C. Bryant, defendant, to recover $15,000 in damages for alleged negligence resulting in the death of William Delmont Gilbert, a guest of defendant in the latter's automobile. While defendant was driving westward about 7 o'clock in the evening, September 7, 1931, on the paved highway between Gretna and Ashland, his automobile struck the railing on the north side of a bridge approximately five miles east of Ashland. As a result of the collision Gilbert was fatally injured. Margie Gilbert, widow, administratrix of decedent's estate, is plaintiff.

It was admitted in the answer that the automobile collided with the railing of the bridge and that Gilbert, now deceased, was then riding in defendant's car, but actionable negligence was denied.

The cause was tried to a jury. At the close of the evidence on both sides, the district court directed a verdict in favor of defendant, which the jury rendered. From a judgment of dismissal, plaintiff appealed.

On appeal plaintiff contends that by her petition and evidence she made a case for the consideration of the jury and that therefore the peremptory instruction in favor of defendant was prejudicially erroneous.

On the contrary, the position of defendant is that, in his automobile at the time and place of the collision, Gilbert was riding as a gratuitous guest and that plaintiff did not plead and prove "gross negligence," as the cause

of decedent's injuries and death, within the meaning of those words as used in the recent guest law which provides:

"The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver of said motor vehicle being under the influence of intoxicating liquor or because of the gross negligence of the owner or operator in the operation of such motor vehicle." Comp. St. Supp. 1931, sec. 39-1129.

The determination of the controversy over the directed verdict depends on the meaning of the statutory term "gross negligence" in connection with the petition and the evidence.

Defendant argues that, in the light of judicial precedents, the following definition of "gross negligence" should be adopted as indicating the sense in which the legislature used that term:

"An unintoxicated driver should be liable to a passenger, not for hire, only when his negligence is such as would amount to an abandoned, monstrous and approximately wanton disregard of safety, and as would amount to a voluntary and intentional indifference to the danger liable to follow."

A definition of that character has not been unanimously accepted by the courts. A milder interpretation of "gross negligence," as used in guest laws, seems to be based on better reasons. In a recent opinion the supreme court of Vermont said:

"Gross negligence is substantially and appreciably higher in magnitude and more culpable than ordinary negligence. Gross negligence is equivalent to the failure to exercise even a slight degree of care. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great negligence, or

the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty, and to utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is, in gross negligence, magnified to a high degree as compared with that present in ordinary negligence. Gross negligence is manifestly a smaller amount of watchfulness and circumspection than the circumstances require of a prudent man. But it falls short of being such reckless disregard of probable consequences as is equivalent to a wilful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from wilful and intentional conduct which is or ought to be known to have a tendency to injure." *Shaw v. Moore,* 104 Vt. 529, 86 A. L. R. 1139. See, also, annotations in 86 A. L. R. 1145.

When the Nebraska guest law of 1931 was enacted, a remedy for negligence resulting in personal injuries to a motorist's guest existed under the constitutional provision that "every person, for any injury done him in his lands, goods, person, or reputation, shall have a remedy by due course of law." Const. art. I, sec. 13. The lawmakers did not intend to destroy entirely the civil remedy of a guest or to incumber the remedy with restrictions that would prevent a recovery for damages in a proper case. They did not define "gross negligence" or use in connection with those words any such terms as "abandoned, monstrous and approximately wanton disregard of safety" or "intentional indifference to the danger." They intended, of course, to increase, beyond want of ordinary care or slight negligence, the degree of negligence essential to the right of a motorist's guest to recover damages for personal injuries. The meaning of the words under consideration, as used in the Nebraska guest law, was explained in a recent opinion as follows:

"The term 'gross negligence' has received the attention

of many courts, with conflicting views as to its proper definition. The courts of some of the states appear to hold that, to constitute gross negligence, there must have been an intentional failure to perform a manifest duty, or the injury must have been inflicted intentionally, or in wanton disregard of the rights of others. Other courts have defined it less drastically.

"We are of the opinion that in adopting the guest act the legislature used the term 'gross negligence' as indicating a degree of negligence. Negligence may be slight, ordinary, or gross. Gross negligence means great or excessive negligence; that is, negligence in a 'very high degree. It may be said that it indicates the absence of even slight care in the performance of a duty, and such, we think, is the meaning intended by the legislature.

"What amounts to gross negligence in any given case must depend upon the facts and circumstances. What would amount to gross negligence under certain circumstances might, under different circumstances, be even slight negligence." *Morris v. Erskine,* 124 Neb. 754.

Within the meaning of "gross negligence," as thus explained, did plaintiff by her petition and evidence present an issue of fact for the consideration of the jury? The pleas relating to negligence are challenged as insufficient. Plaintiff alleged in substance that, while Gilbert and two other guests were riding in the automobile operated by defendant, the latter drove it in a grossly careless, reckless and negligent manner, thus guiding it into the bridge railing. Other acts charged as grossly careless, reckless and negligent were: Operating the automobile at the speed of 50 or 60 miles an hour; guiding the automobile off the pavement; losing control because of the high rate of speed; refusing to comply with requests of guests to lower speed; causing the death of Gilbert by such negligence.

When the petition was drawn, the term "gross negligence," as used in the new guest law, had not been defined in *Morris v. Erskine,* 124 Neb. 754. There was no motion

in the case at bar to make general allegations of negligence more specific. The district court sustained the petition by overruling a demurrer to it. The trial proceeded on the theory that gross negligence had been charged. While the petition is far from a satisfactory model of pleading, it seems to be sufficient, when considered as a whole, to support a judgment in favor of plaintiff, if recoverable under the evidence.

It is a familiar rule of law that, in reviewing a peremptory instruction in favor of defendant, issuable facts, which the evidence in favor of plaintiff tends to prove, will be regarded as established. The admissions and evidence in the record tend to prove the following facts:

Defendant had driven onto the pavement about a mile east of the bridge and had turned westward toward Ashland. Two of the guests protested against the manner in which defendant had been driving. One of them said he would rather walk. Defendant was requested to stop his car and did so perhaps half a mile east of the bridge. Two of the guests got out and sat for a few minutes on the bank by the roadway. Defendant called to them to come back to the car. Complaint was made that the driving had been reckless and dangerous. Defendant swore when asked to let some one else drive and refused to do so. Gilbert asked defendant to cut down the speed, saying they were all liable to get killed. Defendant said, "All right, get in. We'll take it slower on in." Thus assured, the guests who had left the car reentered it and defendant started westward toward Ashland. The speed of the car rapidly increased. Ahead there was an unobstructed view of the bridge. The left wheels zigzagged across the center line of the cement pavement. The two right wheels left the pavement 50 feet or more east of the bridge and ran on the north shoulder of the highway until the car struck the north railing of the bridge at a speed of at least 50 miles an hour. An eyewitness testified that defendant's automobile, weaving back and forth, came down the pavement toward the bridge at a speed of 50 miles

an hour and looked more like an airplane leaving the ground than anything else. There was testimony of a speed of 60 miles an hour. The pavement on the roadbed was 20 feet wide and the bridge was 24 feet wide. The pavement was first open to travel on the day of the tragedy—Labor Day. Defendant had never before been over the pavement and consequently did not know the condition of the north shoulder on the highway and did not know whether he could safely turn the right wheels back on the pavement at a high rate of speed. When the collision occurred, defendant was facing traffic on Labor Day between sundown and dark.

The testimony tending to prove the facts outlined was evidence of gross negligence as the proximate cause of Gilbert's injuries and death—a question for the jury. For the error in directing a verdict in favor of defendant, the judgment is reversed and the cause remanded for further proceedings.

REVERSED.