Ray Thurston, Appellant, v. Eugene Carrigan et al.,
Appellees.

Filed July 17, 1934. No. 28961.

*Weaver & Giller* and *C. J. Thurston,* for appellant.

*Kennedy, Holland & De Lacy* and *Thomas J. Kennedy,* contra.

Heard before Goss, C. J., Good, Eberly, Day and Paine, JJ., and Raper and Tewell, District Judges.

Raper, District Judge.

This is an action by Ray Thurston, by his father and next friend, against Olin E. Harris, owner of an automobile, and against Eugene Carrigan, the driver of the car, to recover damages sustained by Ray Thurston, on account of personal injuries, caused by the alleged gross negligence of the driver of the car in which plaintiff was riding as an invited guest.

Plaintiff's amended petition alleges that on April 2, 1932, about 9 p. m., he was riding as an invited guest in the rumble seat of a car belonging to Olin E. Harris, which was by permission of Harris being driven by Eugene Carrigan for the purpose of taking Olin Gibbs, a nephew of Harris, and others on a treasure hunt. Plaintiff alleges that he was sitting in the middle of the rumble seat with a young lady guest on each side; that Eugene Carrigan was driving, and a young lady sitting next to the driver and Olin Gibbs on the right side of the front seat; that said Carrigan was driving the car south on Tenth street in the city of Omaha by the 3100 block at an excessive, reckless and grossly negligent and unlawful rate of speed of about 50 miles an hour, when he encountered that part of said street which is unpaved and upon which double tracks of the street railway continue south, and that the driver failed to see a drop of 12 inches from the end of the pavement to the road or, if he did see said drop, he negligently drove his car into said drop and negligently failed to apply the brakes before or immediately after running into said depression, and continued on the ties and road for about 150 feet, where he negligently tried to turn the left front wheel to the right and out of said tracks, and as he did so he negligently jumped out of the car and abandoned the controls, and the car turned completely over and plaintiff was pinned under the right rear fender and rumble seat and severely and permanently injured; that plaintiff was not in position where he could observe the speedometer, and did not realize how fast the car was traveling, and did not observe the depression in time to warn the driver of same.

The defendants in separate answers admit that Carrigan was driving the Harris car at said time and place, and that the occupants of the car were on a treasure hunt, and that the accident happened at said time and place, and that plaintiff sustained some injuries. The defendants deny that Carrigan was guilty of any negligence in driving the car and deny the allegations of plaintiff's petition ex-

cept the admissions. The defendants allege that Tenth street is paved up to Spring street with brick, which pavement was smooth and two street car tracks are located thereon, but that, commencing at the intersection of Spring street and south thereof, the pavement ceases abruptly and there is a drop off from the end of the pavement, and that for a short space prior to the drop off the street car tracks are paved with cobble stones, but that portion outside the tracks is not paved; that there was no light at the intersection of Spring and Tenth streets, and because of absence of lights and the darkness of night it was impossible for the driver of the car to see that the paving ceased and that there was a drop off at that point. He was driving with his left wheels between the rails of the west car track. The roadway partially in Spring street and beyond was rough and constituted a dangerous trap which was not observable to oncoming motorists, although using due care; and defendants allege that, as the direct and proximate result of the condition of the street, when the car Carrigan was driving dropped off the end of said pavement and struck said rutty and rough pavement, it was caused to overturn, although the defendant Carrigan used his best endeavors to stop the car and prevent it from overturning, and defendants allege that the said accident was not in any wise the result of any negligence on the part of said Carrigan, but was the result of the condition of the highway, which the city of Omaha had negligently allowed so to remain. Defendants further allege that the plaintiff observed the manner in which the car was being driven; that he acquiesced therein and made no protest; and that, if the car was being driven as plaintiff alleges (but which defendants deny), the conduct of plaintiff in acquiescing and in not protesting amounted to negligence on his part, and to a voluntary assumption of the risks attendant thereon. The plaintiff replied by general denial and alleged that plaintiff had no right to and did not attempt to direct and govern the movement and conduct of the driver of the car.

Trial was had, and all of the parties in the car (except Delores Nichols), including the defendant Carrigan, were called by plaintiff as witnesses, and also the defendant Harris and some others who observed the car shortly before the accident. At the close of plaintiff's testimony, the defendants separately moved for a directed verdict in their favor or a dismissal of plaintiff's action, for the reason that the evidence affirmatively shows that the defendant Carrigan was not guilty of gross negligence within the meaning of the guest statute, and was not guilty of any negligence. The court sustained these motions and dismissed plaintiff's action. Motion for new trial was entered, which was overruled, and plaintiff appeals.

The evidence presents very little dispute in the facts. It is shown that the owner of the car, Olin E. Harris, had a nephew Olin Gibbs, who lived out of town, visiting him, and that the nephew and Eugene Carrigan planned to go on a treasure hunt, and that Carrigan drove the car because the nephew was not' familiar with the city, and Harris supposes he consented to that arrangement. Carrigan was 22 years old and had been driving automobiles for five years. Six young people in the car left the Central High School about 9 o'clock in the evening of April 2, 1932, on a treasure hunt, in a Chevrolet sport roadster with the head lights burning. Eugene Carrigan was driving, Fern Corkin sitting next to him, and Olin Gibbs on the right side of the front seat, the plaintiff sat in the middle of the rumble seat, Jane Stevens sat at plaintiff's left and a young lady, Delores Nichols, was seated at plaintiff's right. They were driving south on Tenth street which had smooth brick pavement which extended to or close to the intersection of Spring and Tenth streets. At that place there was a drop from the brick pavement. For a few feet beyond the brick pavement the street between the west car tracks has cobble stones for paving, and beyond that, between the rails and on the west of the rails, there is no paving. The cobble stones and ties made a very rough and bumpy roadway. . The car was being

driven with the left wheels between the rails of the west street railway tracks (there were double tracks). It does not appear that the driver or any of the occupants of the car knew of the condition of the paving at the intersection of Tenth and Spring streets. There was no street light at the intersection and it was quite dark there, and the drop off could not be observed until very close. Only one witness, a Mr. Larsen, testified directly to the speed of the car as it came down Tenth street. He fixed the speed at about 50 miles an hour. He had observed the car for a couple of blocks as it came down Tenth street. Three or four other witnesses who were walking along Tenth street near the intersection testified that the car was going so fast that they knew something would happen because they knew that the pavement ended at Spring street. None of the occupants of the car was impressed with the fact that the car was being driven at an excessive speed. Plaintiff testified that he did not observe the speedometer and did not notice the speed of the car. He was talking and visiting with his companions, and had confidence in the driver. The car appeared to be running smoothly, without any swaying, and he did not know of any peril or danger until the car hit the drop off at the end of the pavement, and could not say that the brakes were applied, as he did not notice any lessening of speed or screech of brakes or anything to indicate that brakes were applied before the pavement ended. Mr. Larsen testified that he noticed the brakes were not applied. Some other witnesses, including the occupants, took no notice of the application of the brakes. None of the occupants could say whether the brakes were on before the car left the pavement, except the defendant Carrigan, who said he did apply brakes before leaving the pavement but that after the car left the pavement the rough stones and ties on the track seemed to lessen the efficiency of the brakes. The car ran about 120 feet past the end of the pavement, when the driver, thinking he could turn the car out of the railway track, attempted to turn it to the right, but the car turned over

when the wheel struck the rail. Plaintiff's father testified that, after the accident, Carrigan told him that when the wheel struck the rail he let go of the steering wheel and jumped out. Carrigan denies that he jumped out, and stated that he was thrown out when the car started to turn over. The car turned completely over, turned end for end and was badly damaged. Plaintiff was pinned under it and suffered severe injuries. An ordinance of the city of Omaha limited the speed of motor vehicles at that place on Tenth street to 30 miles an hour. There is no allegation or evidence as to the age of the plaintiff, nor what had been his experience in riding in automobiles or observing their speed. It may be assumed that he was a minor because the action was brought by his father as next friend.

The only issue presented by the briefs is whether the facts disclose sufficient evidence on the alleged gross negligence of the defendant Carrigan to require submission of the case to a jury.

The leading case on the guest statute is *Morris v. Erskine,* 124 Neb. 754, which defines gross negligence under that statute, and which states: "Gross negligence, within the meaning of section 39-1129, Comp. St. Supp. 1931, means negligence in a very high degree, or the absence of even slight care in the performance of a duty."

In a later case, *Gilbert v. Bryant,* 125 Neb. 731, the definition in the *Morris* case was followed, and Judge Rose in the opinion, to further elucidate that definition, quoted from an opinion in *Shaw v. Moore,* 104 Vt. 529, 86 A. L. R. 1139, and in the *Gilbert* case it was held: "In the law providing that an unintoxicated motorist shall not be liable in damages to a guest except for 'gross negligence,' that term indicates a degree of negligence greater than want of ordinary care or slight negligence but not necessarily extending to wanton or wilful or intentional disregard of the guest's safety." In that case the rule was announced that, "In an action against a motorist for injuring a guest, the issue of gross negligence should be submitted to the jury, where the pleadings and proof are sufficient to sup-

port a verdict in favor of plaintiff." In the *Morris* case it was decided that the existence of gross negligence must be determined from the facts and circumstances in each case; and, further, the question of gross negligence is for the jury, where the evidence relating thereto is conflicting and from which reasonable minds might draw different conclusions.

A study of some of the adjudicated cases in this court construing the facts as applicable to the guest statute may be helpful in applying the facts in the instant case to rules above cited.

In the cases of *Morris v. Erskine, supra, Gilbert v. Bryant,* 125 Neb. 731, *Swengil v. Martin,* 125 Neb. 745, and *Sheehy v. Abboud,* 126 Neb. 554, wherein the guest was permitted a recovery, the imminence of danger was apparent to the driver and he was cautioned by the guest, but persisted in his negligent driving. The facts in each of those cases disclose that the driver was at least heedless of the consequences which might ensue by his reckless operation of the car, which involved, not only the rate of speed, but included other conditions which enhanced the peril and which were open to the driver. In the last above cited case, Judge Chase, speaking for the court, says: "A rate of speed which would amount to gross negligence in one case might, amid different surroundings and dissimilar circumstances, fall far short thereof."

Of course, it is not necessary in all cases that the operator of a car be aware of impending danger in order to hold him guilty of gross negligence, but that is a circumstance which should be considered. "Where the known risks are enhanced the degree of care should correspondingly increase." *McClelland v. Scroggin,* 48 Neb. 141. The California court, in defining gross negligence in *Helme v. Great Western Milling Co.,* 43 Cal. App. 416, say it is that entire want of care that raises a presumption of conscious indifferent to consequences. While our court has not given gross negligence such an interpretation in terms, the cases in this court above cited have evidence of facts

which bring those cases within the definition of the California case: The drivers were conscious of the peril.

The driver of the car in this case was not aware of the condition of the street at the intersection. There was no light at that place, and the defect in the street could not be seen until very near the end of the pavement, and there was no sign or warning. One ordinarily has the right to assume that a paved street would continue to be reasonably safe for travel, where from change of grade or lack of light the range of vision along the street could not extend beyond a shadowed or darkened place in the street.

It is rather an unusual condition that, if the defendant was driving at the rate of 50 miles an hour, none of the occupants of the car noticed the speed. But, under the testimony, it will be accepted that the driver was operating at a speed in excess of 30 miles an hour as limited by the ordinance, and about 50 miles an hour, and that he did not apply his brakes at an appreciable time before leaving the pavement, yet under all the circumstances the driver was not guilty of gross negligence. As to the incident of the driver jumping from the car, it does not seem material because, when the left rear wheel struck the street car rail, the car started to turn over, and this result would have ensued whether the driver was thrown or jumped from the car. It may be conceded that Carrigan was negligent in operating the car at such rate of speed, but the law requires a much higher degree of negligence than a lack of ordinary care. Taking all the circumstances and conditions into consideration, there was not sufficient proof to warrant a finding that Carrigan, the driver, was guilty of gross negligence, and the refusal of the trial court to submit the case to the jury is right and the judgment of dismissal of plaintiff's action is

AFFIRMED.

PAINE, J., dissents.