CHARLES WOODWORTH, JR., APPELLANT, V. JEMIMA JOHNSTON ET AL., APPELLEES.

FILED MAY 26, 1936. No. 29561.

*Johnsen, Gross & Crawford,* for appellant.

*Crofoot, Fraser, Connolly & Stryker* and *Kennedy, Holland, De Lacy & Svoboda, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

EBERLY, J.

This is a personal injury action brought by Charles Woodworth, Sr., for the benefit of his minor son, Charles Woodworth, Jr., age five years. At the time of the accident in suit, the injured boy was riding in a Ford automobile, then being driven by defendant Jemina Johnston, his grandmother. This car was then owned by the defendant Robert D. Johnston, his grandfather, and was being used as a family purpose car. The car driven by the grandmother was proceeding east on Burt street in Omaha, Douglas county, Nebraska, on its proper side of the highway, when, in passing over a portion of pavement shadowed by the Creighton Stadium, it encountered an icy depression which deflected the car and caused it to swerve and skid angularly to the north and eastward across Burt street where, on the wrong side thereof, it collided with a west-bound truck, owned and driven by defendant Lewis E. Stillman. The boy, Charles Woodworth, Jr., was injured in the collision. This suit is brought against Jemima Johnston and Robert D. Johnston, the grandmother and grandfather, charging the grandmother with gross negligence in driving the car at the time of the accident, and charging the grandfather with liability because of the family purposes to which the use of the car had been devoted by him, which, it was alleged, was sufficient to subject him to the results of the gross negligence of his wife, defendant Jemima Johnston. The defendant Lewis E. Stillman is charged with ordinary negligence which contributed to the accident. At the conclusion of all the evidence the court directed a verdict in favor of all the defendants. From the judgment of dismissal, and the

overruling of his motion for a new trial, the plaintiff appeals.

The testimony of three eyewitnesses details without material conflict the manner in which the accident occurred. It happened about 5 o'clock in the afternoon of February 28, 1934, near the intersection of Twenty-fifth avenue and Burt street. Burt street is an east and west street. It had been a warm winter day, and snow and ice remaining on the streets of Omaha had been melting. It appears that at the time of the accident Burt street was generally free from ice and snow. A structure, known as the Creighton Stadium, was situated immediately south of the scene of the collision, with a wall some 40 feet in height which extended along the south line of Burt street, and effectively shaded a portion of this street, and thus the melting of the snow and ice that had previously accumulated at this point was in a measure thereby prevented. While the evidence as to ice extending along the north half of Burt street may be said to be in conflict, it is not disputed that at about 5 o'clock the temperature fell below freezing, and ice was again formed adjacent to the Creighton Stadium where it had melted earlier in the day. The defendant Stillman was a trucker, and the owner of a new Reo truck which he had purchased in November, 1933. It was equipped with hydraulic brakes, and its general good condition is not questioned in the evidence. It weighed approximately 7,000 pounds and had a cargo on board which amounted to 4,000 pounds. On the day mentioned, it had secured its load and was proceeding westward on Burt street, and it is admitted that during the entire incident it was properly driven on the north half of this thoroughfare, its proper side of the street. Arriving at Twenty-fourth avenue the truck was brought to a full stop in obedience to a road sign located at that point. It then proceeded at a low rate of speed. Witnesses vary in their estimate of the maximum speed of the truck at from 10 to 20 miles an hour from this point to the place of collision. The evidence of the truck driver is that when first discovered by him the Ford

car, which was then driven by Jemima Johnston and in which the plaintiff was riding, was on the south side of the street, and coming east. He testifies: "Q. And tell us how that occurred as to whether it came gradually or whether it darted over, or went fast, or how it occurred? A. Well, she hit this hole, that is it started to skid. There is a little dip there, and after she hit it she lost control and it started to skid, and I think if she had a little heavier car it would not have skidded so much, but at the speed she was traveling and that light car, when she hit this hole, that it was what started her to skid. She skidded a little bit northeast to start with. That is when I slammed on the brakes and then after that she came with a jerk, came in right north. She never changed the speed any that she was traveling. She was traveling the same speed when she hit me as she was traveling when she went in that hole. * * * Q. Now, you think that as soon as you saw her start across the street, I suppose you started to stop? A. Yes, sir; absolutely. Just the minute I saw she hit that, I slammed my brakes."

The evidence indicates that the first swerve or skid of the Ford car occurred about 50 to 60 feet west of the west curb line of Twenty-fifth avenue. Witness Kidd, the only other witness who testifies as to the movements of the truck immediately preceding the impact, says he had stopped his car at the intersection of Twenty-fifth avenue and Burt street. From that point he saw the first swerve of the Ford to the northward, then he at once glanced to the east and saw the truck, with wheels already locked, sliding in the intersection of Twenty-fifth avenue and Burt street. This corroborates the testimony of the truck driver as to his immediate response on the first appearance of danger. The truck, before coming to a full stop, struck the right rear of the Ford at a point from 6 to 12 feet west of the west curb line of Twenty-fifth avenue, and at a place wholly on the north half of Burt street. It is true that the impact thus caused occasioned the damages sued for; but, in view of the few seconds that intervened between

the first signal of possible danger and the crash, the accident was clearly unavoidable. The cross-examination of witness Kidd, who testified as plaintiff's witness, closed with this statement: "It was evident to me that the truckman could not do anything other than what he did do."

It is uncontrovertible that defendant Stillman was at all times lawfully proceeding along Burt street, both as to speed and his position thereon; that an emergency, created by the skidding of the Ford and the accident occasioned thereby, was due to no act of his; and that he acted promptly and properly, and in no manner contributed to the regrettable results that followed. The action of the trial court in directing a verdict in his behalf is approved. *Johnson v. City of Omaha*, 108 Neb. 481, 188 N. W. 122.

So far as the action against Jemima Johnston and her husband, Robert D. Johnston, is concerned, the controlling legislation is our "guest statute." Comp. St. Supp. 1935, sec. 39-1129. It provides in part: "The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver of said motor vehicle being under the influence of intoxicating liquor or because of the gross negligence of the owner or operator in the operation of such motor vehicle." In construing the terms of this enactment, in connection with the action of the trial court in peremptorily dismissing plaintiff's action, we announced the principle that the court may determine whether an automobile host is guilty of gross negligence to a guest, where facts and circumstances are conceded or proved. *Thurston v. Carrigan*, 127 Neb. 625, 256 N. W. 39. See, also, *Heesacker v. Bosted, ante*, p. 42, 267 N. W. 177.

Mrs. Woodworth, mother of plaintiff, is Mrs. Johnston's daughter. Jemima Johnston, on the day in question, was taking her grandson, the plaintiff, down to see the new Union Pacific stream-line train. She was to meet her

husband at Fifteenth and Dodge streets, the Omaha head-quarters. Taking her grandson in her car some blocks distant from the scene of the accident, she drove in traffic neither faster nor slower than the usual traffic on the streets over which she passed. There is no evidence of any snow or ice remaining on any of the intervening streets until she arrived on Burt street at a point north of the high walls of the Creighton Stadium. During this time she had been driving from 25 to 30 miles an hour. As she approached the stadium, the road appeared wet; she did not notice it was ice. When she was upon it her car started to skid north and slightly east. Other evidence fixes the place where the swerving or skidding began at from 50 to 60 feet west of the intersection of Burt street and Twenty-fifth avenue. She lost control of the car, and it skidded north and east and continued until the car hit the curb. At this point it was almost simultaneously struck by an approaching truck, and to this impact the injuries of plaintiff were due. It appears that she had not passed that way immediately prior to this accident, and her testimony is: "Q. Did you know that there was any ice ahead of you, did you know that there was any ice ahead of you before you started to skid? A. No, sir; I did not."

We are unable to find evidence of gross negligence, either as to speed, even if it be conceded that she attained 35 miles an hour, or, under the circumstances, as to her failure to discover an unknown icy depression. *Sheehy v. Abboud,* 126 Neb. 554, 253 N. W. 683. Indeed, from a careful examination of the record, we deem, at most, it may disclose a failure to exercise the care of a reasonably prudent person, but not as showing gross negligence such as gives the guest a right to recover under section 39-1129, Comp. St. Supp. 1935. *Thurston v. Carrigan,* 127 Neb. 625, 256 N. W. 39. See; also, *Morris v. Erskine,* 124 Neb. 754, 248 N. W. 96; *Gilbert v. Bryant,* 125 Neb. 731, 251 N. W. 823; *Swengil v. Martin,* 125 Neb. 745, 252 N. W. 207; *Belik v. Warsocki,* 126 Neb. 560, 253 N. W. 689; *L'Ecuyer*

*v. Farnsworth,* 106 Vt. 180, 170 Atl. 677; *Adamian v. Messerlian,* 198 N. E. (Mass.) 166; *Balcer v. Pere Marquette R. Co.,* 266 Mich. 538, 254 N. W. 198; *Shinville v. Hanscom,* 116 Conn. 672, 166 Atl. 398; *Sadinsky v. Coughlin,* 114 Conn. 585, 159 Atl. 492.

In view of all the facts and circumstances which together make up the present transaction, considered in the light most favorable to the plaintiff, we find no sufficient evidence to sustain the charge of "gross negligence" on the part of Jemima Johnston.

The judgment of the district court is therefore correct, and it is

AFFIRMED.