DOROTHY CLARKE, APPELLANT, v. ORVILLE E. WEATHERLY, APPELLEE.

FILED DECEMBER 18, 1936. No. 29713.

*O'Sullivan & Southard,* for appellant.

*Kennedy, Holland, De Lacy & Svoboda, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

EBERLY, J.

The plaintiff alleges in her petition that, while accompanying the defendant in his automobile, as an invited guest, he, without any warning, drove this automobile against a fire hydrant located upon the grounds and driveway immediately adjacent to the Omaha Municipal Airport, causing the automobile to be violently stopped, and thereby throwing plaintiff in and about said automobile and against the windshield thereof, causing injuries specifically described in her pleading. Gross negligence of the defendant is charged in five particulars, viz.: Driving his automobile against a fire hydrant; excessive speed; failing to stop or slacken his speed or change the course of his car before striking the fire hydrant; failing to keep a proper lookout; failing to keep his automobile under proper control. In his answer the defendant admitted "that on April 5, 1934, plaintiff was riding with him in his Ford coupé as his guest;" and denied all other allegations of plaintiff's petition. In a trial to a jury, at the close of plaintiff's evidence, the court sustained defendant's motion to dismiss plaintiff's petition and action for want of sufficient evidence to support a verdict. From the judgment of the trial court overruling her motion for a new trial, the plaintiff appeals.

The record now before us invokes the application of the language employed by this court in *Rogers v. Brown,* 129 Neb. 9, 260 N. W. 794, viz.: "The question presented by the appeal is the sufficiency of the evidence to make a *prima facie* case in favor of plaintiff for the consideration of the jury, notwithstanding the statute providing that an unintoxicated owner or operator of a motor vehicle shall not be liable in damages to a gratuitous guest except for gross negligence. Comp. St. Supp. 1933, sec. 39-1129. The term 'gross negligence' as thus used has been defined to mean

'negligence in a very high degree, or the absence of even slight care in the performance of a duty.' *Morris v. Erskine,* 124 Neb. 754; *Gilbert v. Bryant,* 125 Neb. 731; *Swengil v. Martin,* 125 Neb. 745; *McDonald v. Wright,* 125 Neb. 871; *Sheehy v. Abboud,* 126 Neb. 554; *Thurston v. Carrigan,* 127 Neb. 625. The remedy of a motorist's guest for negligence resulting in personal injuries, as protected by the constitutional provision, that 'every person, for any injury done him in his lands, goods, person, or reputation, shall have a remedy by due course of law,' was not taken away by the guest law. Const. art. 1, sec. 13; Comp. St. Supp. 1933, sec. 39-1129. The legislature merely changed the degree of proof essential to a recovery for damages. 'In reviewing a peremptory instruction in favor of defendant, issuable facts, which the evidence in favor of plaintiff tends to prove, will be regarded as established.' *Gilbert v. Bryant,* 125 Neb. 731. Proper inferences from such facts may be considered also. With these rules of law in mind, the testimony on the issue of gross negligence requires judicial scrutiny."

In the case at bar, the scene of the accident was what was referred to as the "plaza," situated adjacent to the administrative building of the Omaha Municipal Airport. In the light of the record before us, we define the term "plaza" as "a public square in a city or town." Webster's New International Dictionary (2d ed.) Unabridged. The photographs in the instant case disclose a plaza which, with the highways connected therewith, was prepared for use of the public. Situated within the boundaries, and at considerable distance from the confines thereof, was an ordinary "fire hydrant." On the night of the accident, it was in no manner marked or protected. As the plaintiff and defendant were proceeding to the Municipal Airport of Omaha, and were passing along the highway, they entered what we denominate the "plaza." Therein the defendant, who was at the wheel, when directly west of the Boeing hangar at the airport, turned the car sharply to the right toward a place near this hangar devoted to the parking of cars. He

was then driving about 25 miles an hour. He was not intoxicated. The lights of his car were on, and in good condition. Plaintiff states that when the car turned sharply to the right the crash occurred immediately afterwards. It appears that the right side of the front end of the car struck the fire hydrant, then located in the plaza as already described. This stopped the automobile, which caused plaintiff to be thrown forward, and thereby the injuries complained of were inflicted. Plaintiff testified that she was looking ahead, and stated as she looked ahead the path in front of the car was free from obstructions, and that prior to the collision she never saw the fire hydrant and did not then know of its existence, and never saw it until after the accident. She also stated that the lights on the defendant's car were lights which would cast their reflections straight ahead in front of the automobile, and did not cast any more light to the side than the usual automobile lights would. The defendant, called as a witness for plaintiff, testified that he had no knowledge of the existence or location of the fire hydrant, that constant lookout was kept by him, but the hydrant was not discovered by him until after the accident.

On cross-examination the plaintiff testified as follows: "Q. And he (defendant) was driving around 20 miles an hour? A. I think so. Q. And then you made the turn which you think was for the purpose of going into the parking space? A. Yes, sir. Q. And, of course, almost instantly after making the turn, the crash occurred? A. Yes, sir. Q. Prior to that time you had been looking ahead? A. Part of the time; yes. Q. And as you went up there? A. Yes, sir. Q. And you could see whatever lights, whatever part of the road your light illuminated, you could see that? A. Yes, sir. Q. But you did not see the fire plug? A. I did not; no. Q. As far as you know now, then, you saw the fire plug? That is right, isn't it? A. I did not see it. Q. You did not know what had happened until after the accident happened; then he told you he had hit the fire plug? A. Yes, sir. Q. And did you see it at that time?

A. Yes, right after I came to enough, I did; yes. Q. And that is after he backed up? A. Yes, sir; after he backed up to go back to town, then I saw it. Q. But up to that time, of course, you did not see it or know it was there? A. No, sir; I did not. Q. This is a great, big, wide road? A. A big, wide road running north and south. Q. At any time as you were driving up there, you never saw the fire plug? A. No, sir; I did not see it."

In consideration of the evidence in its entirety, we find therein no substantial conflict. It is to be remembered that, in passing on the question of gross negligence, it is the province of this court to take a series of facts and circumstances, conceded or proved, and to declare what are the rights of the parties arising out of them. *Thurston v. Carrigan,* 127 Neb. 625, 256 N. W. 39; *Belik v. Warsocki,* 126 Neb. 560, 253 N. W. 689. Applying this principle to the facts disclosed by the present record, we are unanimously of the opinion that gross negligence was not proved, and the action of the trial court in directing a verdict for defendant was, in all respects, correct.

The judgment is, therefore,

AFFIRMED.