MARY ALICE GOSNELL, APPELLEE, V. LELA B. MONTGOMERY ET AL., APPELLANTS.

277 N. W. 429

FILED JANUARY 27, 1938.   No. 30113.

*Harold A. Prince* and *Walter R. Raecke*, for appellants.

*Beghtol, Foe & Rankin* and *Edward J. Patterson, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, CARTER and MESSMORE, JJ., and TEWELL, District Judge.

TEWELL, District Judge.

This action was begun by the plaintiff, Mary Alice Gosnell, a minor, by a next friend, to recover damages arising from personal injuries received by the plaintiff when an automobile in which she was riding overturned. Lela B. Montgomery, a defendant, was the driver of the automobile. John W. Machamer, the only other defendant,

is the father of the defendant Montgomery, and was the owner of the automobile at the time of the accident involved. From a verdict and judgment against both defendants in favor of plaintiff, both defendants appeal.

The only question presented by the defendants in oral argument to this court, and the only one we deem necessary of determination, is that of whether or not the evidence is sufficient to support a finding of the jury to the effect that the defendant Montgomery was guilty of gross negligence proximately causing plaintiff's injuries. Chapter 105, Laws 1931, now section 39-1129, Comp. St. Supp. 1937, provides in part as follows:

"The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver of said motor vehicle being under the influence of intoxicating liquor or because of the gross negligence of the owner or operator in the operation of such motor vehicle."

That the defendant Montgomery was not in any manner intoxicated and that the plaintiff was not riding for hire are both conceded. To determine whether or not the defendant Montgomery can be said as a matter of law not to be shown to have been guilty of gross negligence, within the meaning of the above quoted statute, necessitates a careful analysis of the facts shown by the evidence.

On May 3, 1934, the defendant Montgomery, her daughter Martha, and one Lois Coolidge drove a Chandler automobile from Central City, Nebraska, to Lincoln, Nebraska. In doing so, they drove across a point on the highway where such highway intersects a railroad. This point is upon state highway No. 66, and is located about 23 miles east of Central City, Nebraska. Nothing in the evidence shows that anything occurred in crossing this railroad crossing on the ride to Lincoln that called the attention of defendant Montgomery to any roughness in the highway at such crossing. It is not shown that defendant Montgomery ever drove or rode over this crossing prior to this

trip. Two days later, on May 5, the defendant Montgomery and her daughter Martha and said Lois Coolidge, accompanied by the plaintiff, left Lincoln about 7:30 a. m. for the purpose of driving back to Central City. The plaintiff accompanied the party at the invitation of defendant Montgomery for the purpose of a visit with her friend Martha. All of the parties in the automobile knew that Lois Coolidge desired to reach Central City by 9 o'clock a. m. in order that she might report at that hour for work at her employment. On this trip home the defendant Montgomery drove the car, Martha rode with her in the front seat, and that plaintiff and Lois Coolidge rode in the rear seat. The highway at the point of the railroad crossing above mentioned runs from east to west. The railroad crosses the highway from the south to the north side in such manner as to run slightly to the northeast from the southwest but not quite forming a right angle with the highway. The day was clear and the roadbed dry. Other than the automobile involved, no traffic was on the highway. This railroad crossing is located in a broad depression in the surrounding terrain, so as to cause a car on the highway and approaching the crossing from the east to descend down a long slight incline. The bottom of this incline is several rods west of the railroad crossing. From this bottom the highway bed ascends a long slight incline toward the west. A sign-post several feet high warning of the existence of the crossing was located on the south side of the highway some distance east of the crossing. The top of this sign could be seen from any point on the highway that is within a distance of at least several hundred yards from and east of the crossing. The point in the highway that is crossed by the railroad is plainly visible from any point on the highway that is within a distance of at least several hundred feet from and east of such point. A photograph taken several months after the accident involved discloses that the east rail of the railroad crosses the highway with the top of the rail about even or a little lower than the roadbed, and

874

that the top of the west rail thereof in places is perhaps an inch above the roadbed. · The highway was a straight graveled state highway apparently about 24 feet in width. Its width at the crossing and for at least several hundred feet either way from the crossing was approximately constant. A ridge of gravel several inches in depth extended along the north edge of the highway roadbed. Aside from showing that the top of the west rail was slightly above the roadbed, the evidence does not disclose that the crossing was other than a smooth, level crossing on the date of the accident involved. When the car in which plaintiff was riding was nearly upon the crossing, Martha said, "Be careful, mother, this is a bad crossing." Immediately upon this remark being made defendant Montgomery applied the foot brakes of the car. No. other deduction can be made from the evidence than that the brakes were applied either when the rear wheels of the car were on the crossing or when the rear wheels had crossed the west rail. Upon the application of the brakes the car swerved to the north until its front wheels struck the ridge of gravel along the north edge of the highway, then swerved to the south edge of the roadbed, and then again swerved · to the north and across the roadbed and went over the north embankment of the roadbed through a wire fence and into a field. It came to rest in an upright position facing east in this field. All tires were still. inflated. The brakes were not locked. The plaintiff was injured in such accident. The opinion evidence as to the speed of the car at the crossing places the speed at all the way from 40 to 60 miles an hour. The evidence affirmatively shows that the brakes on the car were in good working order and fails to disclose any part of the car to have been out of normal condition. At the time of the trial of this cause in November, 1936, a road sign, other than the white colored sign above mentioned, existed near the south edge of the highway roadbed some distance east of the crossing. This sign, yellow in color, displayed the letters "R. R." and, beneath these letters, the words, "Twelve Miles, State

Law." We find nothing in the evidence to show that such sign was in existence at the time of the accident. Inasmuch as appellee assumes in her brief that such sign did exist at the time of the accident, we assume, for the purpose of this opinion, that such a sign existed at the time of the accident at the place it did at the time of the trial. On the trip home prior to the accident, Lois Coolidge had urged the driver to hurry. All of the occupants of the car testified that they had not deemed the speed or manner of driving unusual or dangerous at any time prior to the accident, and that no warning was given by any one aside from that by Martha heretofore quoted.

The appellee insists that the facts of this case do not bring it within that class of cases in which the defendant is suddenly faced with an emergency, and that, even if it were such a case, the defendant Montgomery is not aided by such rule when her own wrong or failure to use due care brought her to such an emergency. To support such contention the plaintiff cites the following authorities: *Sterns v. Hellerich,* 130 Neb. 251, 264 N. W. 677; 1 Blashfield, Cyclopedia of Automobile Law and Practice, sec. 669. We concede the correctness of the rule of law to which reference is made by this contention, but find it not determinative of the question here involved. In this case defendant Montgomery may have been guilty of some negligence in her approach to the crossing, even though she had crossed it two days before without noticing any condition making speed across it dangerous. She may have made an improper choice of courses to pursue, or even have been guilty of negligence in the application of the brakes, when warned by Martha of the crossing being "bad." The question involved is that of whether or not all of her acts that proximately caused the injury to plaintiff constituted gross negligence. If guilty of negligence less than gross in approaching and in arriving at the crossing, and if also the application of the brakes under all circumstances shown constituted gross negligence, which we deny, then we concede that she could not escape lia-

bility for such gross negligence upon a claim that the brakes were applied in an emergency and that their application proved to be an improper choice of courses to pursue. This court has defined gross negligence as used in the above quoted statute as being negligence of a very high degree that includes but does not necessarily extend to wanton, wilful or intentional disregard of the guest's safety. *Sterns v. Hellerich, supra; Gilbert v. Bryant,* 125 Neb. 731, 251 N. W. 823; *Morris v. Erskine,* 124 Neb. 754, 248 N. W. 96. It may be that a reasonable mind might say that defendant Montgomery was guilty of some negligence either in the speed with which she approached the crossing, or in the application of the brakes, or in both manners, or in other manners. We have no occasion to decide. We do declare that, under the circumstances shown in the evidence, she may not as a matter of law be found to have been guilty of gross negligence. It must be kept in mind that the roadbed at the crossing was plainly visible to her at all times after she crossed a point on the highway at least several hundred feet east of such crossing, and that there was nothing in the appearance of the crossing, or in her experience of having crossed it two days before, that would ordinarily give rise to a feeling of unsafety in a driver of ordinary and common prudence. The crossing is not shown actually to have been dangerous even when crossed at high speed. When evidence is resolved most favorably toward the existence of gross negligence, and thus a fixed set of facts had, the question of whether or not such facts will support a finding of the existence of such gross negligence is a question of law. *Thurston v. Carrigan,* 127 Neb. 625, 256 N. W. 39; *Heesacker v. Bosted,* 131 Neb. 42, 267 N. W. 177; *Clarke v. Weatherly,* 131 Neb. 816, 270 N. W. 316; *Belik v. Warsocki,* 126 Neb. 560, 253 N. W. 689; *Lemon v. Hoffmark,* 132 Neb. 421, 272 N. W. 214. Plaintiff cites and relies upon the following cases: *Morris v. Erskine, supra; Gilbert v. Bryant, supra; Swengil v. Martin,* 125 Neb. 745, 252 N. W. 207; *Rogers v. Brown,* 129 Neb. 9, 260 N. W. 794; *Sterns v.*

*Hellerich, supra; Hendren v. Hill,* 131 Neb. 163, 267 N. W. 340. In the case of *Morris v. Erskine,* warning by the guest in time to have avoided the injury, a race with a motor cycle, and a visible obstacle in the road ahead are all present. In the case of *Gilbert v. Bryant,* warning and request to reduce speed, and an unknown road, prior swerving of the car back and forth across the road, and the facing of traffic between sundown and dark at a high rate of speed were present. In the case of *Swengil v. Martin,* high speed, a visible curve ahead in the road, timely warning by the guest, and an obstacle ahead to be avoided were all present. In the case of *Rogers v. Brown,* darkness, excessive speed in view of the traffic, passing other cars in an intersection into which cars were coming from all directions, and a visible obstacle ahead which the defendant completely failed to see were all present. In *Sterns v. Hellerich,* darkness, excessive speed, timely warning, curves in the road, a hill, and a narrow bridge ahead all entered into the acts of negligence charged and proved. In the case of *Hendren v. Hill,* darkness, high speed and an obstruction in the road ahead, which defendant either did not see when he should have seen it, or which he recklessly failed to avoid, are disclosed by the evidence. To declare the evidence in this case sufficient to support a finding of gross negligence would be to thwart the intent of the legislature in the passage of the act above quoted.

This case was twice tried in the trial court. From the nature of the facts involved it plainly appears that no reliable, competent and material evidence other than that already produced can be produced upon another trial. The judgment of the trial court is therefore reversed and this cause remanded, with instructions that it be dismissed with prejudice to a future action, and that costs be taxed to the plaintiff.

REVERSED, WITH DIRECTIONS TO DISMISS.