JOHN WILLIAM JAMES, APPELLANT, V. HARRY KREBEK ET AL., APPELLEES.

7 N. W. (2d) 637

FILED JANUARY 22, 1943.  No. 31198.

M. S. McDuffee and Elmer C. Rakow, for appellant.

Jackson & Rice, Peterson & Devoe, Matzke & Bek and Ralph M. Kryger, contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

This case is before us on rehearing. Former opinion is reported in 141 Neb. 73, 2 N. W. (2d) 629.

The mother and next friend brought this action to recover damages for personal injuries sustained by her son, a minor, 19 years of age, in an automobile collision on a public highway between two automobiles driven by defendants while he was a gratuitous guest in one of the cars.

Plaintiff's petition alleges that his injuries were caused by the negligence of the defendants approximately concurrent in time and each contributing to his injuries; that defendant Wright, the driver of the car in which plaintiff was riding, was guilty of gross negligence in not having his automobile under control, in not keeping a proper lookout, in turning to the left in front of defendant Krebek's automobile, in not being on his own right side of the highway, and in not avoiding the accident; that defendant Krebek was guilty of negligence in driving his automobile on his left-hand side of the highway at an excessive rate of speed, such as to endanger the life and limb of other persons generally using said highway, in not keeping a proper lookout, in not having his automobile under control, and driving it into the Ford. Defendants' answers are, in effect, a general denial.

The accident occurred on highway No. 275, surfaced with oil mat or black top, 24 feet in width, and about a mile and a half east of Meadow Grove, Nebraska, on May 1, 1940, at approximately 11:30 a. m., in front of the Haskell Osborn farm. The highway for the most part near the place of the accident is smooth and practically level. Defendant Wright was driving a Ford automobile east on said highway and defendant Krebek a Buick sedan, proceeding west thereon. The day was clear, the wind blowing, and the visibility good. The highway runs out of Meadow Grove from the east on a section line, and near the Osborn farm there is a

wide turn, taking the road southeast from the section line. A few rods west of the Osborn house is a concrete culvert wider than the oil mat. On the south side of the highway, east of the culvert, there is a curve sign, and east of this sign is the Osborn driveway on the opposite side of the highway, and where the highway leaves the turn south it angles in that direction for a half mile where it connects with the half-section line, then proceeds straight west in what amounts to a large "S" curve for a half-mile. The land is level and there are no trees of any size on the south side of the highway for some distance west of the Osborn place and for some distance southeast. A grove, some trees and shrubs near and about the Osborn farm and along the highway will be referred to later.

On the morning in question plaintiff, as a guest of Wright, proceeded from Tilden, Nebraska, on highway No. 275 in an easterly direction, and as they approached the Osborn farm, Wright called plaintiff's attention to a car coming toward them from the east. Plaintiff testified they were then just west of the culvert, and Wright said: " 'Look at that car,' and he wondered if it was ever going to get over;" that, considering the highway at that point as an "S" curve, the approaching car was coming out of the curve about half-way around it. The witness explained that "after you get past the Osborn farm there is a short curve to the south and then the road runs in a southeasterly direction for about a half-mile, then there is another more wide, sweeping curve that turns into the straight-away going on east;" that plaintiff and Wright were on the straight east and west road when Wright made the remark, and they continued thereon until they were somewhere past the Osborn driveway and west of a bridge. Plaintiff saw the Buick approaching, and it was on the south side of the road when his attention was called to it, and when the Buick came out of the curve, he remembered sliding down in his seat because he felt that an accident was unavoidable. He placed the Krebek car on its south and left side, and the Wright car on its right and south side, of the highway. Plaintiff

stated that he did not pay any attention to the car coming from the east until Wright called his attention to it. The curve sign is seven feet south of the south edge of the mat. The distance from the west side of the culvert to the curve sign is 360 feet, and the distance from the curve sign to the beginning of the curve where the road takes·off to the southeast is 180 feet. The height of the road above the ditch on the south side near the curve sign is four feet, and there is a four-foot fill above the adjacent ground in the center of the grade. The distance from the curve sign to the driveway into the Osborn place is 125 feet, and the distance to the beginning of the curve to the right from the bridge on the highway is 540 feet; that is, where the road begins to curve to the southeast. The bridge is the same width as the highway and a 10-foot span.

At the time of the collision Osborn was in front of his barn sacking wool. He did not see the accident, but heard the cars come together and was the first person on the scene. The only witnesses to the accident were the plaintiff and the two defendants. The Ford car stopped right on the fence line on the north side of the highway, 60 to 70 feet from Osborn's driveway and a little west thereof. The Buick was upside down over by the curve sign, lying on its top, facing almost straight north and a little to the northwest. Most of the Buick car was south of the white line, pointing north. Glass and débris on the highway were well scattered. Osborn stated there was a little more north of the center of the highway than in other places, and he noticed grease spots of Prestone coming from the Buick over the road to the south side. The shoulders on each side of the highway were approximately six feet wide; on the south side there was a ditch four or five feet deep where dirt had been apparently taken to fill in other parts of the highway. The Ford came to rest off the grade on level ground northeast of the curve sign on the south side of the highway, a little more east than north. The grade, compared to the low spot where the Ford was, is four or five feet and stops where the Ford car laid on the fence line.

The witnesses testified as to glass on the highway, but there was no unanimity of observance as to the quantity and location of the glass. One witness testified that there was a little more glass north, while others testified that there was a little more south, of the white line. The point of impact of the Buick was the right front corner, right front wheel and fender, and the part thereof which came into contact with the Ford was practically torn off. The whole right corner of the car was crushed and bent back. There was a dent on top where the Buick came into contact with the road when it turned to the left and rested on its top.

A mechanic, who went after the Wright car, testified that the Ford was lying "on the north side of the road just at the bottom of the grade," north of the turn, a little west of the Osborn driveway, on the fence line, on its right side, facing west; with reference to the right front wheel or front door of the Ford, that "the main part came just behind the front wheel" and just in front of the front door, indicating the most serious damage to the Ford; that its whole right side was destroyed; that "just about the cowl and front door took the worst part of the blow."

The witness Gardiner, two and a half hours after the accident, went to the scene for the purpose of picking up the Krebek car, but it was gone. He observed what he took to be burned rubber tracks in two places just about in the center of the highway, which looked as if the burn might have been made by two wheels of one car and two wheels of the other, where they came together, and the impact had skidded the cars a little. The witness believed "the Buick was about straddle of the mark" in the middle of the highway. There was a burn mark north of the white line which proceeded over to the south thereof, and which would be the mark of the Buick; one mark was just about on the white line, and one mark 20 inches north of the line, which would be the north mark of the Ford, and that the marks were those of the rear wheels of the Buick and a wheel of the Ford. The witness did not know whether it was the front

or rear wheel of the Ford, but "it looked like the front."
On cross-examination, this witness stated that all of the
marks were on the north side of the center line of the high-
way, and there is some confusion with reference to whether
there were four burn marks or three. There seems to be
little dispute as to the respective positions of the cars im-
mediately after the accident.

At this juncture, the plaintiff rested, and the defendant
Wright moved for a directed verdict, challenging the suf-
ficiency of the evidence to prove gross negligence on his
part. This motion was sustained.

In the case of *Morris v. Erskine,* 124 Neb. 754, 248 N. W.
96, which is the first case in this court defining "gross neg-
ligence" under the guest law (Comp. St. Supp. 1931, sec.
39-1129), the court held: "Gross negligence, within the
meaning of section 39-1129, Comp. St. Supp. 1931, means
negligence in a very high degree, or the absence of even
slight care in the performance of a duty." On page 755 of
the opinion the court said: .

"We are of the opinion that in adopting the guest act the
legislature used the term 'gross negligence' as indicating a
degree of negligence. Negligence may be slight, ordinary
or gross. Gross negligence means great or excessive negli-
gence; that is, negligence in a very high degree. It may be
said that it indicates the absence of even slight care in the
performance of a duty, and such, we think, is the meaning
intended by the legislature."

With respect to reviewing a peremptory instruction, the
law is well settled that, where such instruction is in favor
of defendant, issuable facts which the evidence in favor of
the plaintiff tends to prove will be regarded as established.
*Gilbert v. Bryant,* 125 Neb. 731, 251 N. W. 823.

The question presented is: Is the evidence sufficient to
submit to the jury the question of gross negligence on the
part of defendant Wright?

It appears from the evidence that Wright saw the Kre-
bek car when the Wright car was over 600 feet distant
therefrom. The distance from the west side of the culvert

to the curve is 540 feet; the Wright car was west of the culvert some distance, and the Krebek car was half-way around the curve when Wright first saw Krebek and made the remark to the plaintiff about the on-coming car. The Wright car must have traveled over 400 feet, while the Krebek car must have traveled 300 feet, from the time that Wright made the remark to the plaintiff. At the time, he was some distance west of the bridge, and he made this remark before he collided with the Krebek car at or near the curve sign.

The plaintiff testified that Wright said he could not meet the Krebek car head-on, so he turned to the left; he did not turn to the right because of the culvert; and Krebek said he could not meet the Wright car head-on and turned to the left to avoid an accident. Both the Wright and Krebek cars turned to the left and both cars were on the south side of the road.

There is no competent evidence of speed of the Wright car. The only eyewitness testifying to the accident was the plaintiff. It will be noted that the other witnesses testified to the position of the two cars after the accident and to the condition thereof, and as to the débris, fragments of glass and Prestone. There was no evidence as to any of the acts of Wright in driving his automobile or of his conduct in connection with its operation. Plaintiff stated that Wright was driving on the south side of the highway and continued to so drive. There was no evidence before the plaintiff rested that Wright was on the wrong side of the highway, unless it would be the testimony of the plaintiff that Wright turned to the left to avoid a head-on collision; he did not turn to the right because of the culvert. Plaintiff testified that Krebek had been on his wrong side of the highway. Then there is the evidence given by the witness Gardiner, with reference to the burned tire marks, observed two and a half hours after the accident, which testimony is confusing as to whether there were four or three burn marks, and is speculative as to which tire marks would be attributable to either the Buick or to the Ford car. It is

not clear in disclosing that the accident happened 20 inches to the north of the center line of the highway. The witness Gardiner attempts to back up his statement on the theory as to what he believes constitutes tire marks attributable to each car.

From a careful review of this evidence up to the time that the plaintiff rested, and further considering the fact that the record does not disclose any offer to withdraw the rest, or the offer of any further testimony in behalf of the plaintiff at any time, we hold that the record is void of sufficient evidence to disclose gross negligence on the part of Wright.

After the motion for a directed verdict was sustained in favor of Wright, the case proceeded as to the negligence, if any, of Wright and Krebek, and which, if either, was guilty of negligence that constituted the proximate cause of the accident.

Krebek, a man 65 years of age, was returning from Norfolk with his son-in-law, leaving there at 10:55 a. m., and driving between 45 and 50 miles an hour. He testified that there was an exceptionally high wind, with sufficient force to interfere with the operation of his automobile, so that he was obliged to be careful. As he proceeded west on the highway he first saw the Wright car as he came around the turn and "got onto the straight-away," and as he came into the east and west road he saw the Wright car coming at a distance of approximately 600 feet. The Wright car was on the west side of the bridge; Krebek was driving on the north side of the highway, which was his own right side, and the Wright car was on its own side of the highway. Krebek stated that he was driving along and noticed the Wright car coming, and when it seemed to get behind a grove of trees it just came across the road in front of him, and his thought was how was he going to miss it. The grove of trees was the box elder and cottonwood grove, the north side of which is straight north of the culvert; a row of willows in a draw that is bridged by the culvert, and an "L"-shaped grove around the farm buildings, with larger

trees to the north; along a fence of the yard is a row of mulberry trees, a little bushy and uneven, at some distance apart,—in some instances 30 or 40 feet and in some not over 20 feet. Part of the buildings and the house on the Osborn farm extend east to the driveway, and south along the driveway are some trees and east thereof are some old and rather large trees. If this distance is correct and the position of Krebek's car was as he testified, it is apparent that if there was much wind blowing the trees as described would lessen the force of the wind at that particular point. When Krebek first turned to the left, he did not know how close the Wright car was before he was on top of it, and on the north side of the road at the time, until he turned his wheel, believing he could miss the Wright car. He stated that his left front wheel was probably over the white stripe in the center of the highway, and his right front wheel hit the Wright car by the right front door, but at that time it was still on the north side of the white line; that he was driving 50 miles an hour; that Wright made a sudden turn to the left onto Krebek's side of the highway; that Wright was on his side of the highway and Krebek on his until Wright was even with the grove of trees; at that point the Wright car shot across the highway in front of Krebek's car, which stopped right in the center of the road, rolled to the south, which would be to the left; the Wright car proceeded 60 feet across the highway northeast, and the accident happened 25 or 30 feet west of the curve sign. Krebek stated that he could not turn to the right because the Wright car was suddenly in front of him. His son-in-law was unable to tell anything about the accident.

A state patrolman testified that in his opinion the two cars came together approximately 33 feet east of the curve sign; that the markings where the two cars came together consisted of skid scratches on the oil mat, and were on the south side of the center of the highway. Wright testified that the wind did not whip his car across the highway from the south to the north; did not bother him, and he did not know how far he was west of the culvert; that he watched

the Krebek car and it was being driven on the south side; that he, Wright, did not change his position and that Krebek's car remained on the south side of the highway; that he saw the Krebek car from the time he turned east past the bridge, and that it was on the south side at all times; that the cars came together pretty close to the middle line of the highway; that he, Wright, was driving not to exceed 45 miles an hour. The jury returned a verdict in favor of defendant Krebek.

Again considering the measurements, the curve sign is 180 feet west of the curve and 360 feet east of the bridge. The cars collided at a distance of within 20 feet west of the curve sign, or, as stated by the patrolman, 33 feet. Krebek would then have traveled 180 feet to 220 feet, while the Wright car was traveling 320 to 360 feet, immediately preceding the collision. If Krebek was proceeding at 50 miles an hour, as he testified, then Wright must have been going at a greater speed.

We have this situation: A controverted issue of fact with reference to the position of the two cars on the highway, Krebek stating that he was on the north or his own right side of the highway at all times, and Wright testifying that he was at all times on his own right or south side of the highway, and that Krebek was at all times on the south side of the highway. We then have the controverted issue of fact as to the exact distances traveled, between the Krebek car and the Wright car, when Krebek first observed the Wright car and Wright first observed the Krebek car. This must be ascertained from the measurements. Next we have the damage to the two cars, where the greatest degree of impact manifested itself on each car, both on the right side. Then we have the question as to how either or both of the drivers could have avoided the accident. Each saw the other at such a distance that there was no apparent emergency, except that Krebek testified that Wright suddenly turned to the left and he believed that the best way for him, Krebek, to avoid an accident was to turn to the left.

No exceptions are taken to the instructions. If either of the defendants violated the law with reference to speed, or by his failure to keep a proper lookout, or by failure to have his car under control, such a violation, independently, is not negligence in and of itself, but may be taken into consideration, together with all of the other facts and circumstances in the case, to determine the question of negligence. *LaFleur v. Poesch,* 126 Neb. 263, 252 N. W. 902; *Gleason v. Baack,* 137 Neb. 272, 289 N. W. 349.

The gravamen of the accident is negligence. The record discloses a sharp conflict in the evidence. The question was one for the jury. The plaintiff requested an instruction on the issue of negligence. The instructions were not assailed in the presentation of this question to the jury. If negligence constituted a question of fact, it was a jury question under the circumstances. The jury resolved the question in favor of defendant Krebek, and unless it is manifestly and clearly wrong this verdict cannot be set aside.

For the reasons given in this opinion, the motion for a directed verdict at the close of the plaintiff's evidence is sustained and the judgment thereon affirmed. The question of negligence as between defendants Wright and Krebek presented a jury question, which was terminated in favor of defendant Krebek. The verdict and judgment in this respect are affirmed. Our former opinion is vacated and set aside.

AFFIRMED.

Rose and Eberly, JJ., not participating.

SIMMONS, C. J., dissenting.

In my opinion the evidence was sufficient to present a jury question as to the gross negligence of defendant Wright. Accordingly, I dissent from that holding of the majority.