ELIZABETH JANE LEMON, APPELLEE, V. RICHARD F. HOFF-
MARK, APPELLANT.

272 N. W. 214

FILED MARCH 23, 1937.   No. 29900.

*Hall, Cline & Williams*, for appellant.

*Chambers & Holland*, contra.

Heard before GOSS, C. J., ROSE, DAY, PAINE and CARTER, JJ., and MESSMORE, District Judge.

MESSMORE, District Judge.

This is an appeal from a judgment of the district court for Lancaster county entered upon a verdict of the jury in favor of the appellee in the sum of $750.

For a reversal of this judgment appellant contends that Helen Hoffmark, the driver of the car in which appellee was riding at the time she received the injuries complained of, was not guilty of gross negligence, that such finding of the jury was clearly against the weight of the evidence, and that the trial court erred in refusing to direct a verdict for appellant on his motion made at the conclusion of appellee's case and at the conclusion of the trial.

The evidence discloses that the accident occurred on a Sunday afternoon, at about 4 o'clock, on an east and west country dirt road north and west of the village of Emerald, in Lancaster county; that said road was not wide but in

comparatively good condition; that the day of the accident, February 10, 1935, was a clear day, described by one witness as "gorgeous;" that seven girls of high school ages, 16, 17 and 18, were riding in the car at the time of the accident, three in the front seat and four in the rear seat.

The evidence is not clear or definite as to just what the driver of the car did do at or just prior to the accident. The witness, Evelyn Hopkins, seated in the rear seat of the car on the left side at the time of the accident, testified that the driver of the car took her right hand off the steering wheel and moved it to the back of the front seat, turned her body to the right and looked around so the witness could see her face and one but not both eyes; that the driver took her eyes off the road ahead of the car and the accident occurred almost instantly. Describing the course of the car after leaving the road, this witness said: "I was sitting so I could see out of the window and I noticed we were off the road and then it just slid into the ditch very quick." This witness further testified as follows: "Q. Why did she (meaning the driver) turn? A. We were eating and she was going to get something. * * * Q. Who in the back seat gave Helen something to eat? A. Dorothy Van Patten. Q. And when was that? A. It was just a little before the accident happened. Q. How much before? A. It was just before. Q. You mean just instantly before? A. Yes. * * * Q. Well, what did they say * * *? A. They said, 'Here is a sandwich for you.' * * * Q. Did you all have the lunch boxes open at that time? A. Yes. * * * Q. But you do know Dorothy Van Patten handed her (the driver of the car) a sandwich? A. I am quite sure she did. Q. Did Helen Hoffmark get the sandwich? A. I don't know. * * * Q. Then after this remark was made Helen Hoffmark turned, did she, in the seat? A. Yes. Q. And put her right hand up on the back of the seat, did she? A. Yes." This same witness testified that the driver drove 25 feet after she put her right hand on the back of the front seat, that she turned her head slightly, and that the car was going 30 miles an hour at the time of the accident.

Appellee testified that the driver turned her head to the right so she could see three-fourths of the profile of her face, and that the driver looked back toward the back seat; that everything happened so quick, the car just shot across the road, going west, and went into the ditch on the left; that at the time the car started for the ditch and went into the ditch the driver was looking toward the back seat.

Witness Helen Hoffmark, the driver of the car, testified that they had had something to eat about a half an hour before the accident; that just prior to the accident she was not reaching into the back seat to get a sandwich. Her version of the accident is given in her answer to the following question: "Q. Tell the jury in your own words how this accident occurred, what you were doing. A. We were driving along this country road; it was wide enough for one car in the hard center portion and we were going along about 20 miles an hour and some one said, 'Look, Hoffie,' in the back seat, and I glanced around, and as I glanced I believe the car went slightly to the left-hand side of the road and was pulled into this soft part of the road and after that I think we hit the ditch." To the question, "What happened as you glanced back and the wheels hit the soft dirt, what happened to the car?" this witness replied: "The car was pulled to the left-hand side of the road and off into the stubble, I should call it." This witness further answered: "I turned my head, I may have turned my shoulders slightly, but I don't think so." To the question, "How long did you look towards the back seat?" she replied, "Just the fraction of a second."

The witness Betty Orme, seated in the front seat to the right of the driver and between the driver and appellee, said there was a general remark about Mary Margaret, one of the girls riding in the rear seat, and fixed the speed of the car at 25 to 30 miles an hour just before the accident.

The witness Dorothy Van Patten, riding in the rear seat on the right side, fixed the speed of the car at 25 miles an hour at the time of the accident; that she saw the driver glance around when her attention was called to the back

seat, when some one said, "Look around, Hoffie," and that the driver glanced around just for a second; that she was sure, when the driver turned around, she did not take her right hand off the steering wheel and put it on the back of the front seat; that she did not see the driver at any time just before the accident occurred reach back into the back seat for a sandwich; that the driver declined a sandwich.

The testimony discloses that the car did not turn over after leaving the road, but stopped in the deeper portion of the ditch.

The foregoing constitute the pertinent facts in this case as they relate to the accident.

The sole and only issue is the sufficiency of the evidence to warrant the submission to the jury the question of gross negligence on the part of the driver at the time of the accident.

Counsel for appellant have analyzed for the benefit of the court all of the Nebraska decisions involving an interpretation of the guest act. Most of these indicate excessive speed or a continuous course of negligent conduct on the part of the driver or protests made by persons riding in the car to the driver about the manner of his driving.

The Nebraska guest act, section 39-1129, Comp. St. Supp. 1935, reads as follows: "The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver of said motor vehicle being under the influence of intoxicating liquor or because of the gross negligence of the owner or operator in the operation of such motor vehicle. For the purpose of this section, the term 'guest' is hereby defined as being a person who accepts a ride in any motor vehicle without giving compensation therefor, but shall not be construed to apply to or include any such passenger in a motor vehicle being demonstrated to such passenger as a prospective purchaser."

The use of intoxicating liquors is not involved in the instant case.

In *Morris v. Erskine,* 124 Neb. 754, 248 N. W. 96, it was held:

"Gross negligence, within the meaning of section 39-1129, Comp. St. Supp. 1931, means negligence in a very high degree, or the absence of even slight care in the performance of a duty.

"The existence of gross negligence must be determined from the facts and circumstances in each case.

"The question of gross negligence is for the jury, where the evidence relating thereto is conflicting and from which reasonable minds might draw different conclusions."

In the opinion in case of *Morris v. Erskine, supra,* we find this language: "We are of the opinion that in adopting the guest act the legislature used the term 'gross negligence' as indicating a degree of negligence. Negligence may be slight, ordinary, or gross. Gross negligence means great or excessive negligence; that is, negligence in a very high degree. It may be said that it indicates the absence of even slight care in the performance of a duty, and such, we think, is the meaning intended by the legislature. * * * Ordinarily, the question of negligence, whether slight or gross, is one of fact. If the evidence respecting it is in conflict and is such that ordinary minds might draw different conclusions therefrom, then a question of fact is presented for the jury to determine."

In case of *Thurston v. Carrigan,* 127 Neb. 625, 256 N. W. 39, wherein a directed verdict was entered for defendant by the lower court and the action of the lower court affirmed by this court, without repeating the facts therein shown, the principal fact noted being that of negligence in driving at a high rate of speed, this court stated in its opinion: "In determining questions of alleged negligence, it is the province of the courts to take a series of facts and circumstances conceded or proved, and to declare what are the rights of the parties arising out of them."

In cases of *Covey v. Anderson,* 130 Neb. 702, 266 N. W. 595, and *Heesacker v. Bosted,* 131 Neb. 42, 267 N. W. 177, both citing the case of *Morris v. Erskine, supra,* it was held

that evidence of gross negligence must be determined from the facts and circumstances in each case, as do all the decisions of this court subsequent to the decision in case of *Morris v. Erskine, supra.*

In the case at bar the facts disclose that the existence of danger, if any, was not apparent to the driver of the car; no protests were made to her by her guests in the manner of operation of the car; there was not a continuous course of negligent driving, nor did the driver persist in driving negligently; the driver was not heedless of the consequences nor conscious of the peril; the speed of the car was moderate. Analyzing all the facts pertinent to the accident and as herein set out, Helen Hoffmark, the driver of the car, may have been guilty of negligence, that is, of doing something that a reasonable and prudent person would not ordinarily have done in the situation and under the circumstances in question, or she may have failed to do what a reasonable and prudent person would have ordinarily done in such situation and under such circumstances, yet she was not guilty of gross negligence, as such term has been defined by this court.

It is true that it is not necessary, in order to show gross negligence, to prove several acts of negligence; that is, a continuous course of negligent conduct, or excessive speed combined with such conduct, or protests on the part of the guest to the driver at and prior to the time of the accident.

It is also true that gross negligence may consist, in some cases, in turning the head or taking the eyes off the road, but all the conditions and circumstances in existence at the time of the commission of the alleged grossly negligent acts are to be taken into consideration.

In the case at bar the accident occurred on an ordinary country road and in the absence of traffic. The road was in fairly good condition, though it was not wide, but with about six inches to a foot to spare on each side of the car to the soft dirt, and was in such condition that travel over it under the circumstances was not dangerous. The accident happened perhaps when the driver took her eyes

from the road, as shown by the testimony, for a fraction of a second or not to exceed a second; perhaps the car did travel 25 feet after leaving the road.

We believe that it was error on the part of the lower court to submit the case to the jury, under the evidence, and the judgment of that court is therefore reversed and the action dismissed.

REVERSED AND DISMISSED.