MARJORIE KOVAR, APPELLEE, V. JOHN BECKIUS ET AL., APPELLANTS.

275 N. W. 670

FILED NOVEMBER 5, 1937. No. 30101.

*L. R. Doyle, Frank Mizera* and *Bernard S. Gradwohl,* for appellants.

*Thomas & Thomas, Coufal & Shaw* and *Ray E. Sabata, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and MESSMORE, JJ., and KROGER, District Judge.

MESSMORE, J.

This is an appeal from a jury verdict in the district court for Butler county, wherein the plaintiff recovered damages for personal injuries sustained by virtue of an automobile accident.

The amended petition of plaintiff alleges the topography of the highway, charges gross negligence on the part of defendant John Beckius in certain particulars, and prays damages sustained by plaintiff. The defendants' answer contains a general denial, the defense of contributory negligence, and alleges that plaintiff assumed the risk, failed to object to or protest against the driving of John Beckius, and was acquainted with the proficiency and ability of the driver. The evidence reflects that the DeSoto automobile was driven by the defendant John Beckius, with the consent of the owner, Nick Beckius. For convenience, defendant John Beckius will be hereinafter referred to as the defendant.

On September 24, 1935, at 10 p. m., or shortly thereafter, defendant, driver of the automobile, the plaintiff,

Marjorie Kovar, seated with him, and Howard Kovar, plaintiff's brother, sitting behind the driver, with Rose Sabata at Howard Kovar's right, in the rear seat, were proceeding north from David City on the David City-Schuyler road.

The immediate facts in this case relate to the method and manner of driving the car from the top of "Demuth Hill" down the grade of said hill. The testimony of the witnesses for plaintiff and defendants as to the grade and topography of the hill is so similar that no controversy arises therefrom. "Demuth Hill" is composed of light clay soil, which easily powders, erodes and washes. It does not hold gravel well, the gravel not working into it. The road grade is approximately 32 feet wide and is maintained to within two feet of the edge of the road grade because of the washing of gravel. The outer edge of the gravel ridge was about two and a half feet wide, which left 26 feet of clearance on the west edge of the gravel to the extreme west edge of the highway. On the night of the accident, there were cuts and holes in the outer edge of the road grade about 20 feet north of Demuth driveway, one of which was about two and one-half feet long and about six inches wide. There were also two washouts of smaller dimensions. The traveled portions of the highway were free from these washouts. "Demuth Hill" is a high hill, with steep banks, and, in order to construct a passable road grade, it was necessary to remove the dirt from the hill and construct a grade from the hill to the valley, which grade extended upward from the natural elevation, so that the grade was higher than the level of the land on either side.

Defendant testified that he was driving around 35 miles an hour on his own side of the highway and maintained such speed until he arrived at "Demuth Hill," when he saw an automobile, traveling north on its own right side of the road, which later developed to be the Rudolph Vrba car. Defendant started to increase his speed to go around the Vrba car when he was a distance of 150 feet

from the top of "Demuth Hill" south. He followed the Vrba car over the top of the hill and about half the distance down hill, and then asked his companions if he should pass the car. One of them said "O. K." He then started to pass the Vrba car, increasing his speed slightly, and, watching ahead, he could see the road. He testified that there was a space of about three feet between his car and the Vrba car when he passed, and about three feet between his car and the edge of the road; that he did not know whether he got clear past the Vrba car; that the first time he was aware of any trouble was when his car started to bounce and gave a severe jolt; that he did not remember going down the road or into the ditch. He testified further that he had driven the highway on an average of two or three times a week, knew the road and knew that the soil on "Demuth Hill" washed easily and that grades were made to fill in low places where they were washed out at the edge of the road, but that, until the night of the accident, he did not notice the holes in the highway which his car struck; that plaintiff made no complaint of his driving and gave no warning.

Rudolph Vrba testified that he was traveling the highway at about 10:15 on the night of the accident, and that his car was proceeding at about 40 miles an hour; that defendant's car overtook him on the north slope of the extreme right side of the road and passed quickly; that there was considerable room between the two cars as defendant's car passed and went on swiftly about two car lengths ahead of witness' car; that at that point defendant's car started to bounce up and down and went into the ditch, swaying back and forth as it went, but that it stayed on its wheels; that all of a sudden the radiator of the car shot up on the side, and the car rolled over twice; that when defendant's car went into the ditch it traveled 150 feet before it came to rest.

The plaintiff testified that she was familiar with "Demuth Hill;" that she had driven with the defendant on many occasions and knew the manner of his driving and his way

of passing other cars; that he would accelerate the speed of his automobile and not drive parallel with the car which he was passing, but would increase his speed to go around quickly; that at the time of the accident, as they reached the top of "Demuth Hill" they saw a car towards the east; that the defendant said: "There goes Nick Meisenberg, he isn't going to beat us very much to Schuyler;" that defendant stepped on the gas, the car gained speed, and Rose Sabata yelled: "Look out Johnnie;" that defendant had turned to the left side of the road which was heavy with dust, the lights of his car not penetrating through the dust, and that after traveling a short distance she noticed that they were passing the car of Rudolph Vrba; that there was a wide space between the two cars at the time of passing; that defendant's car was proceeding north along the edge of the shoulder of the road; that defendant did not diminish his speed after the warning given by Rose Sabata. Plaintiff remembered nothing further relative to the accident.

The wrecked car, 20 minutes after the accident, was facing southeast. The measurements taken disclosed certain tracks from the point of Demuth driveway north, right on the ridge of the west edge of the road, for about 200 feet, which track apparently "hung" to the west edge of the road bank, and for about 200 feet the track turned into the ditch. The course of the car, after the track turned into the west ditch to where the car came to rest, was about 122 feet. There the car apparently struck some brush and then proceeded about 128 feet more before it came to rest. After striking the brush, the car evidently tipped over and hit the ditch. The distance between the point where the car turned into the ditch and where it finally came to rest was appproximately 160 feet; the ditch in which the car came to rest was from two to three feet deep, and where the car went into the ditch at the driveway the ditch was about 10 to 12 feet deep. Following the course of the car from Demuth driveway to the point where it plunged into the west ditch, there was a washout, from two to two and

a half feet long and six inches wide, on the west edge of the road, running east and west, about 20 feet north of the driveway. There were washouts of smaller dimensions on the same edge of the roadbed.

Appellants contend that the court erred in submitting the cause to the jury, for the reason that the evidence failed to disclose gross negligence on the part of defendant, and cite several cases in support of such contention, the principal ones being *Thurston v. Carrigan,* 127 Neb. 625, 256 N. W. 39, and *Heesacker v. Bosted,* 131 Neb. 42, 267 N. W. 177. These cases are clearly distinguishable from the case at bar. In the instant case the defendant was going down the grade of a steep hill, with which he was familiar, knowing the condition of the soil, its tendency to erode and wash out, and raise dust easily when being traveled. He elected to turn to the left to pass a car, accelerated his speed, and the facts clearly indicate that the speed of his car was from 60 to 65 miles an hour at the time defendant passed the Vrba car in a cloud of dust which his lights failed to penetrate until after he had passed; that he proceeded past the car approximately two car lengths when he must have struck the holes on the west edge of the highway, causing his car to bounce to such an extent that he lost control of it and was unable to tell any part of the story thereafter. Defendant testified that it was dangerous to drive a car at 50 to 60 miles an hour over such highway in the night-time and undertake to pass a car going down a hill.

Gross negligence means negligence in a very high degree, or the absence of even slight care in the performance of a duty. The existence of gross negligence must be determined from the facts and circumstances in the case. *Morris v. Erskine,* 124 Neb. 754, 248 N. W. 96; *Sterns v. Hellerich,* 130 Neb. 251, 264 N. W. 677; *Lemon v. Hoffmark,* 132 Neb. 421, 272 N. W. 214.

In the body of the opinion in *Thurston v. Carrigan, supra,* quoting from the case of *Gilbert v. Bryant,* 125 Neb. 731, 251 N. W. 823, it was said that the term "gross negligence"

"indicates a degree of negligence greater than want of ordinary care or slight negligence but not necessarily extending to wanton or wilful or intentional disregard of the guest's safety." And in *Morris v. Erskine, supra,* it was said that the question of gross negligence is for the jury, where the evidence relating thereto is conflicting and from which reasonable minds might draw different conclusions. Of course, it is not necessary in all cases that the operator of a car be aware of impending danger in order to hold him guilty of gross negligence, but that is a circumstance which should be considered. Where the known risks are enhanced, the degree of care should correspondingly increase.

*Sterns v. Hellerich, supra,* cited by appellee, is a case somewhat analogous to the case at bar. In that case the driver had been warned by one of the passengers in the rear seat of the car, as he was proceeding down a hill on a curved road, and, in disobedience to that warning, he continued to drive at 50 miles an hour; the car was weaving from side to side before it reached a bridge and plunged through the left-hand side thereof. The evidence on behalf of defendant tended to show that no warning was given the driver of the dangerous place in the road. He was familiar with the road, while plaintiff had never before been over the road. This court held that the rate of speed and whether a warning was given were questions of fact for the jury.

In the case at bar, the defendant was familiar with the road, more so than the plaintiff. He proceeded down a steep hill, in the night-time, in a cloud of dust which his lights failed to penetrate until after he had passed the Vrba car, and in the space of two car lengths ahead of the car he struck some holes in the road, not on the highway proper; his car followed down a ridge of gravel on the edge of the road for 200 feet; he lost control of it at the time he struck the bumps in the road, and, although previously warned, as occurred in the *Sterns* case, he failed to heed the warning, even though not given by plaintiff; nor did the plaintiff in the *Sterns* case give the warning. In

our opinion, the facts in the instant case constitute a question of gross negligence for the jury to determine.

Appellants' second assignment of error is to the effect that the court erred in instructing the jury that they could return a verdict based upon any one of the acts of negligence pleaded in the amended petition.

"Instructions given to a jury must be construed together, and if, when considered as a whole, they properly state the law, it is sufficient." *Clausen v. Johnson,* 124 Neb. 280, 246 N. W. 458.

Appellee cites the case of *Vorce v. Independent Telephone Co.,* 86 Neb. 27, 124 N. W. 836, in which it was held: "Where a requested instruction is refused by the trial court, but the court embodies the same idea in an instruction given upon its own motion, the party requesting such instruction having suggested it to the court will not be heard to complain that it is erroneous."

The appellants tendered an instruction embodying the idea that if the defendant had been guilty of gross negligence in one or more of the particulars alleged in plaintiff's petition, such gross negligence, if any, was the proximate cause of plaintiff's injuries, if any. We think the trial court committed no error in this respect.

Appellants' last assignment of error is that the court failed to submit to the jury the issue of contributory negligence and the assumption of risk by the plaintiff.

"Contributory negligence is conduct for which plaintiff is responsible, amounting to a breach of duty which the law imposes upon persons to protect themselves from injury, and which, concurring and cooperating with actionable negligence for which defendant is responsible, contributes to the injury complained of as a proximate cause." 45 C. J. 942.

The evidence has been extensively covered in this opinion and will not be reviewed in considering this assignment of error. The record does not disclose that the statement "O. K." was made by this plaintiff. The evidence is not clear as to whether the plaintiff knew of the holes in the

road, as contended by defendant. At least, she did not see the holes where the defendant turned his car to go around the Vrba car. The accident happened within a very short period of time, possibly not over five seconds. Plaintiff, by her silence, did not acquiesce in and approve the grossly negligent conduct of the defendant. She was not bound to anticipate such reckless driving and grossly negligent conduct on his part, as the facts in this case indicate.

"The standard of the duty of an invited guest riding in an automobile is the same as the driver's, but the conduct to fulfil that duty is ordinarily different because their circumstances are different. Whether reasonable care has been exercised in either case is a question of fact for the jury, unless the facts were such as to which reasonable minds would not differ in declaring such facts to constitute negligence." *Glick v. Poska,* 122 Neb. 102, 239 N. W. 626.

The court in the instant case told the jury that, ordinarily, a guest is not required to watch the road or advise the driver in relation to the management of his automobile, and may assume that the driver is reasonably safe and careful, but that, when a situation arises which is out of the ordinary, the guest is under a duty to warn of dangers which would be apparent to the passenger; that if the plaintiff neglected her duty in this regard and failed to warn, if able to warn, when a warning from her would have been of avail in avoiding the accident, the jury would have a right to take such circumstances into consideration. This instruction seems to cover the duty of the plaintiff in this regard.

We find from the record no evidence of contributory negligence on the part of the plaintiff, and that the trial court was correct in not submitting the issue of contributory negligence to the jury. Under the facts in this case as explained herein, the plaintiff did not assume the risk, as contended by appellants.

The judgment of the district court is

AFFIRMED.