HARRY CALVERT, ADMINISTRATOR OF THE ESTATE OF JANICE RAE CALVERT, APPELLEE, V. TED MILLER, APPELLANT.

80 N. W. 2d 123

Filed January 4, 1957. No. 34043.

(501)

*Sherman W. McKinley, Jr.,* and *McEntaffer & Fachman,* for appellant.

*Kindig & Beebe, John F. Clemens,* and *Donald E. O'Brien,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This litigation results from a tragedy which occurred on the highway between Ponca and Willis on July 11, 1954. The persons directly involved were Gary Miller, 18-year-old son of appellant; and Janice Rae Calvert and Janet Kay Calvert, 15-year-old twin daughters of Harry Calvert and his wife. They left Newcastle about 1 o'clock of the afternoon of that date for a contemplated trip to Sioux City, Iowa. They traveled in a Chrysler automobile operated by Gary Miller. They occupied the front seat of the automobile with Janice Rae Calvert sitting between the driver and her sister. They traveled on Highway No. 12. It had a graveled surface from Newcastle to Ponca and an asphalt or black-top surface about 25 feet wide from Ponca to Willis. The highway extended from the northwest to the southeast. The day was clear, bright, warm, and pleasant. The highway was in good condition.

The trip was uneventful until they were about 3½ miles northwest of Willis. As they traveled southeast toward that town they came to an area of higher ground spoken of in the record as Summit Hill. It was a modest one. The elevation was not great and the distance from the highest part southeastward to the bottom of it was about .15 of a mile. The highway was level from that point east to the place of the accident, a distance of about .35 of a mile.

There were two automobiles, with approximately 30 or 40 feet between them, traveling toward the southeast that were a short distance from the bottom of the hill when the Chrysler car in which the three persons named were riding reached the top of it. The nearest car ahead of the Chrysler car was driven by a Mr. Olsen and the automobile ahead of it was operated by a Mr. Armstrong. The speed of the Chrysler car was greater than that of the other two cars and it came within an estimated 9 or 10 car lengths of the rear of the Olsen car and was moving closer to it. The driver of the Olsen car turned it to the left so that a part of his car crossed the center line of the highway into the lane for northwesterly-bound traffic to enable him to get a view of any traveler approaching from the opposite direction. He desired and intended to pass the Armstrong car. The passing lane was clear of traffic. Olsen did not know there was an automobile approaching his car from the rear until after he had turned to the left across the center of the highway, although there was nothing to have prevented him from seeing the Chrysler car behind him if he had looked. The noise made by the tires on the Chrysler car when the brakes were applied caused Olsen to glance to his left and backward and he saw that car to his left and about 10 feet to the rear. He quickly turned his car to the right into his lane. His version is: "When I heard them tires, why, I whipped back to the right." The Chrysler automobile had, when it was a considerable distance from the Olsen car, commenced a turn to the left into the passing lane when Olsen turned his car to the left with the intention of entering the passing lane. The brakes of the Chrysler were applied and the tires made a noise. Olsen saw the situation and quickly moved back to the right-hand lane of the highway. The tire marks made by the Chrysler car evidence the severity with which the brakes were applied. The skid marks made by the tires showed the car skidded about 160 feet in an at-

tempt to avoid collision with the Olsen car. The Chrysler car traveled sharply to the left and it went off the highway, across a ditch, into a field, turned over more than once, and came to rest on its top about 30 feet from the highway in a field. The occupants of the Chrysler car were severely injured. The injuries suffered by Janice Rae Calvert caused her death at the place of the accident.

The proof of the speed of the Chrysler automobile was an opinion of an expert that it was in excess of 65 miles per hour, testimony without contradiction that the sister of the deceased had stated to appellant that the speed of the car on the day of the accident was 70 miles per hour, and other evidence that the rate of speed was 80 miles per hour and that it was increased going down the hill toward the place of the accident before the brakes on the car were applied.

The deceased, her sister, and Gary Miller had been friends for about 3 years and had frequently gone places by automobile operated by the latter. The deceased and Gary Miller were more often in each other's company and on occasions this was as frequent as 5 nights a week. He had a car of his own and she rode with him and was familiar with his manner of driving. It was known that he habitually drove at a high rate of speed. The only remark made in reference to his manner of driving, so far as the record shows, was at the time it is claimed that he said after they passed Ponca on the day of the accident that they could make Sioux City in a very short time. The sister of the deceased testified concerning this: "I said we weren't in that big of a hurry."

The Olsen car and the Armstrong car were traveling 50 miles per hour. There was no traffic toward the northwest on Highway 12 that was in any way concerned in or contributed to the accident.

Janice Rae Calvert and Janet Kay Calvert were guests of Gary Miller at the time of the accident. The

claim of appellee is that the death of Janice Rae Calvert was proximately caused by the gross negligence of Gary Miller because, as it is alleged, he failed to have proper control of the automobile he was operating, failed to keep a proper lookout, drove at a speed of 90 miles per hour, was unable to avoid a discernible object within the range of his vision, and failed to give a signal of his attempt to pass vehicles traveling in the direction he was going. The liability against appellant asserted by the legal representative of the estate of Janice Rae Calvert, deceased, is that Gary Miller was a minor son and a member of the family of appellant; that Gary Miller was driving the family car owned, provided, and maintained by appellant as a family car for the use and convenience of his family; and it was being so used by his son at the time of the accident. Appellant denied the claims of appellee.

The challenge of the appellant to the sufficiency of the evidence to justify a verdict for appellee by motion for a dismissal of the case at the close of the evidence-in-chief of appellee and by motion for a directed verdict for appellant at the conclusion of all the evidence after the parties had finally rested was denied. The verdict and judgment were for appellee. The motion of appellant for judgment notwithstanding the verdict or for a new trial was overruled. This appeal contests the correctness of the ruling denying the motion and the judgment for appellee.

It is necessary to determine if the proof is sufficient to sustain the finding of the jury in favor of appellee on the issue of gross negligence. The evidence and reasonable inferences therefrom must be considered most favorably to appellee. Rice v. Neisius, 160 Neb. 617, 71 N. W. 2d 116. The legal representative of a guest to recover damages from a host for injury received by a guest while riding in an automobile operated by the host must prove by the greater weight of the evidence in the case the gross negligence of the host re-

lied upon and that it was the proximate cause of the accident and injury. Ottersberg v. Holz, 159 Neb. 239, 66 N. W. 2d 571. The proof in this case intended to establish gross negligence is without substantial conflict as to any material matter and the question of its existence is one of law for the court. When the evidence and its legitimate inferences are resolved most favorably toward the existence of gross negligence, and thus the facts are determined, the question of whether or not they support a finding of gross negligence is one of law. Ottersberg v. Holz, *supra.* Gross negligence within the meaning of the statute means great and excessive negligence; that is, negligence in a very high degree. It indicates the absence of slight care in the performance of a duty. § 39-740, R. R. S. 1943. What amounts to gross negligence in a case depends upon its facts. Ordinary negligence of the operator of an automobile does not justify or permit recovery for injury to a guest of the operator. Rice v. Neisius, *supra.*

The specifications pleaded by appellee that Gary Miller failed to keep a proper lookout and that he attempted to pass a vehicle preceding him on the highway when the passing lane was not clear have no support in the record. There is no proof that he did not have complete control of the automobile he was operating until the Olsen car was suddenly turned to the left and, to some extent, into the passing lane in which the Chrysler car had moved or was entering for the purpose of passing the Olsen car. There is no evidence that Olsen gave any signal or warning that he was intending to change the position of his car and direct it toward or into the lane to his left or that Gary Miller had or could have had any notice or reason to believe that Olsen would do so. The record permits an inference that Gary Miller was justified in assuming that the Olsen car would continue in the right traffic lane of the highway and that it could be safely passed as the operator of the Chrysler car intended and was attempt-

ing to do. Belik v. Warsocki, 126 Neb. 560, 253 N. W. 689. It is a permissible inference from the facts that the cause of the accident was the failure of Olsen to give proper attention to the traffic to his rear and his improper conduct under the circumstances. There is no reason to conclude that the Chrysler car would not have safely passed the Olsen car without incident but for the unfortunate failure and conduct of Olsen as recited above.

There is emphasis on the high rate of speed of the Chrysler car. Excessive or improper speed may be evidence of negligence but excessive speed is not alone gross negligence. Rice v. Neisius, *supra;* Cunning v. Knott, 157 Neb. 170, 59 N. W. 2d 180; Pavlicek v. Cacak, 155 Neb. 454, 52 N. W. 2d 310; Gummere v. Mudd, 139 Neb. 370, 297 N. W. 622. The violation of traffic regulations concerning speed, the giving of signals, the manner of operating a motor vehicle on the highway, and the like is not negligence as a matter of law of any kind or degree but it is a fact that may be considered with the other evidence in the case in deciding an issue of negligence. Born v. Estate of Matzner, 159 Neb. 169, 65 N. W. 2d 593; Rice v. Neisius, *supra.*

The owner or operator of an automobile may not be adjudged liable for injury sustained by a guest on proof that he was negligent. His liability in such an instance arises only when his negligence is of the character defined as gross negligence by the Legislature and the decisions of this court. There is no evidence in the case that Gary Miller was heedless of the safety of his guests, that his negligence was of a very high degree, or that his conduct indicated absence of slight care. The conduct of Gary Miller slowing or stopping the Chrysler automobile near a bridge not far from the location of the accident to permit a truck to precede him across the bridge indicates that he was not heedless of the safety of his guests or that he operated the automobile without even slight care. The situation

portrayed by the record may not reasonably be held to disclose that Gary Miller was guilty of gross negligence within the meaning of the guest statute.

The judgment is reversed and the cause is remanded with directions to the district court of Dixon County to render and enter judgment in favor of appellant and against appellee notwithstanding the verdict of the jury.

REVERSED AND REMANDED WITH DIRECTIONS.