CHARLES WERNER, BY AND THROUGH HIS SISTER AND NEXT FRIEND, DELORES LEE BROWN, APPELLEE, V. WALTER GRABENSTEIN, APPELLANT.

85 N. W. 2d 297

Filed October 11, 1957. No. 34215.

*Frank M. Johnson* and *Healey, Davies, Wilson & Barlow,* for appellant.

*Stewart & Stewart,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This appeal is from a judgment in favor of appellee and against appellant for damages resulting from injuries sustained by appellee while a guest in a pick-up truck owned by appellant while it was being operated by his son Gary Grabenstein under conditions which rendered appellant responsible for the actions and omissions of his son. A motion for a directed verdict was made at the conclusion of the evidence by appellant because, as he asserted therein, the evidence was not sufficient to sustain a finding that Gary Grabenstein, hereafter referred to as Gary, was guilty of gross negligence in the operation of the motor vehicle involved at the time of the accident. The motion was denied and the issue of gross negligence was submitted to the jury. It found for appellee. Appellant moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion was overruled and judgment was rendered on the verdict. The validity of the judgment is the subject of this appeal and the sole contention made in this court is that the evidence is insufficient to sustain a finding adverse to appellant on the issue of gross negligence.

The accident involved occurred late in the afternoon of July 1, 1953. Appellee was 14 and Gary was 15 years of age. They and all the persons concerned in the happenings which resulted in this litigation were and have continued to be neighbors, friends, and intimates except the father of appellee who died after the accident. La Vonne Grabenstein, mentioned herein as LaVonne, was a younger sister of Gary. Appellee and Gary were and have continued to be very close friends. In the vernacular, they were "pals."

Appellee, Gary, and LaVonne were at the time of the accident riding in a G.M.C. three-quarter ton, 1950 model pick-up truck owned by appellant and maintained in such circumstances as to be subject to the family car doctrine at the time important to this case. It was equipped

with snow or mud tires which are sometimes in the record spoken of as "knobby" tires. The truck was in good and usable condition. It could be operated on a highway at a speed of 45 miles per hour without difficulty but at this speed the motor turned over very rapidly because of the ratio of the gears. It was geared for power and not for speed. It was almost impossible for the truck to operate at 60 miles per hour. This was done only once to the knowledge of its owner and that was on U. S. Highway No. 30, a hard-surfaced road.

The truck was not carrying a load. Gary was seated in the truck to the left and operated it. LaVonne was to his right, and appellee was on the extreme right of the seat of the truck. They traveled north on a county graveled road, the graded portion of which was about 25 feet in width and the traveled part of it was about 20 feet. There was some loose gravel on the traveled portion and there was a ridge of gravel along each side of the road near the outside edge of the graded portion. It was a clear, hot, and dry summer day. The vehicle in which the persons were riding was the only one on the highway which they were using immediately before and at the time of the accident. The condition of the road was described as rough because it had alternating small valleys and elevations on its surface, giving it the effect of a washboard surface referred to in the record as "washboardy." The road, as it extended north from where the truck entered it for the trip which ended in the accident, for a distance of about one-half mile, crossed a bridge and creek, went over or along a slough, and had several quite sharp S curves in it. The truck was operated over this part of the road at a speed of from 40 to 45 miles per hour. Thereafter for a distance of about, but probably somewhat less than, one-half mile the road extended straight north to an intersection with an east-and-west county road. When the truck entered this part of the road it was traveling about 40 to 45 miles per hour and the rate of speed was increased so that in ap-

proximately one-fourth of a mile a speed of 65 miles per hour had been attained. At that time the truck was 300 or 400 yards from the intersection mentioned above and it was swerving from one side to the other in the road. Gary then said the speed of the truck was 65 miles per hour and appellee verified the correctness of this statement by glancing at the speedometer. Appellee was frightened because of the speed, the condition of the road, and the action of the vehicle. He protested by saying to Gary that he had better slow down because he was going too fast. Gary did not heed the protest of appellee and LaVonne said to Gary that he should slow down or she would tell Dad and he would be mad. The speed of the truck was not decreased and it continued to go from one side of the road to the other. Appellee said a second time to Gary that he should slow down but Gary made no effort to decrease the speed of the truck. Immediately after the last protest or warning of appellee to Gary the truck struck the right or east ridge of gravel along the road. The truck then moved to the west and struck the ridge of gravel on the left of the road, and then returned to the right side of the road. The truck was then swaying, bouncing around, and zigzagging on the road. It was then that appellee lost consciousness or, as he stated, "blacked out." His next remembrance was that he was sitting on the ground east of the road about 20 feet in an alfalfa field. He was seriously injured.

Gary testified that due to the "washboardy" condition of the road the truck swerved and bounced. It was empty and, to make it worse, it had "knobby" tires. It started sliding, hit the right side of the road first, swerved to the left side of the road, and then back across the road. By that time he did not have any control over the truck and it went into the ditch. The truck went off the road to the east and came to rest on its side.

It was 254 feet from skid marks on the left or west side of the road to where it went off the road on the east side. There was evidence that while making the

trip from the place of the accident to the hospital Gary said repeatedly that he would never drive again and LaVonne said that Gary should not have done it and that he was driving too fast. LaVonne said at the place of the accident that she had told Gary not to drive so fast and that she would tell his Dad. Gary lived within a half mile of the north-south road on which the accident happened, was familiar with it, and knew its condition. He knew it was rough or, as he said, "washboardy," that there was loose gravel on it, and that there was excess gravel along both sides of the road. He knew that when a pick-up truck is not loaded it is hard to control in the road and especially so when the surface of the road is rough.

The circumstances of the cause require that in considering and deciding the issue of gross negligence the evidence relating to it be viewed most favorably towards appellee and that he have the benefit of any reasonable inference deducible therefrom. Paxton v. Nichols, 157 Neb. 152, 59 N. W. 2d 184. It is because of this that only the evidence tending to establish the existence of gross negligence has been noticed in the foregoing recitation and that evidence contradictory of it has been disregarded.

An issue concerning gross negligence must be decided from the facts of each case. Sautter v. Poss, 155 Neb. 62, 50 N. W. 2d 547; Kiser v. Christensen, 163 Neb. 155, 78 N. W. 2d 823. An issue of gross negligence is for the jury if the evidence relating thereto is conflicting and from which reasonable minds might arrive at conflicting conclusions. Morris v. Erskine, 124 Neb. 754, 248 N. W. 96; Lincoln v. Knudsen, 163 Neb. 390, 79 N. W. 2d 716. When the evidence is resolved most favorably to the existence of gross negligence, and thus the facts are determined, the inquiry of whether or not they support a finding of gross negligence is one of law. Ottersberg v. Holz, 159 Neb. 239, 66 N. W. 2d 571. A guest, to recover damages from a host for injury received by the

guest while riding in a motor vehicle operated by the host, must prove by the greater weight of the evidence in the case the gross negligence of the host relied upon and that it was the proximate cause of the injury. Calvert v. Miller, 163 Neb. 501, 80 N. W. 2d 123. Gross negligence within the meaning of the motor vehicle guest statute means great and excessive negligence or negligence in a very high degree. It indicates the absence of slight care in the performance of duty. Calvert v. Miller, *supra.*

Decisions of this court have quite plainly indicated matters that should be found to justify a conclusion of gross negligence. In Thurston v. Carrigan, 127 Neb. 625, 256 N. W. 39, it is said: "In the cases of Morris v. Erskine, supra (124 Neb. 754), Gilbert v. Bryant, 125 Neb. 731, Swengil v. Martin, 125 Neb. 745, and Sheehy v. Abboud, 126 Neb. 554, wherein the guest was permitted a recovery, the imminence of danger was apparent to the driver and he was cautioned by the guest, but persisted in his negligent driving. The facts in each of those cases disclose that the driver was at least heedless of the consequences which might ensue by his reckless operation of the car, which involved, not only the rate of speed, but included other conditions which enhanced the peril and which were open to the driver." The quoted language is strikingly pertinent to the present case. The evidence referred to above discloses that the driver of the truck had knowledge of the imminence of danger. He was thrice cautioned by the other occupants but he persisted in his negligent driving. He had an abundant opportunity to desist from his recklessness. The facts indicate quite clearly that he was heedless of the consequences that might and did quickly ensue from his acts and omissions that should be characterized as grossly negligent. These involve not only rate of speed but other matters such as repeated warnings and requests that he reduce the speed of the truck because he was going too fast, adverse conditions of the road, and the nature of

the vehicle he was operating. These were all known to the driver and they enhanced the perils to which he subjected his guest.

A reference to this in negative form appears in Lemon v. Hoffmark, 132 Neb. 421, 272 N. W. 214: "In the case at bar the facts disclose that the existence of danger, if any, was not apparent to the driver of the car; no protests were made to her by her guests in the manner of operation of the car; there was not a continuous course of negligent driving, nor did the driver persist in driving negligently; the driver was not heedless of the consequences nor conscious of the peril; the speed of the car was moderate."

Gummere v. Mudd, 139 Neb. 370, 297 N. W. 622, reviewed many cases decided by this court and denied the existence of gross negligence in the case then under consideration. However, it is there said: "Authorities relied upon by plaintiff for reversal all disclose the ever present imminence of danger visible to, known by, or made known to the driver, together with a persistence in negligence apparently heedless of the consequences thereof; evidence of negligence far in excess of any appearing in the case at bar and from which different minds might reasonably draw different conclusions as to the factual question of gross negligence." This basis of deciding the absence or the existence of gross negligence has been recognized in the later cases of Paxton v. Nichols, *supra,* and Born v. Estate of Matzner, 159 Neb. 169, 65 N. W. 2d 593.

Morris v. Erskine, *supra,* the first case which arose under the motor vehicle guest statute to reach this court, considered these facts: Defendant was driving an automobile on a graveled highway and plaintiff was a guest in the car. Defendant increased his speed to 60 or 65 miles per hour in overtaking and passing a motorcycle which made something of a race of it. Plaintiff admonished defendant to drive more slowly and that he was driving too fast. Defendant disregarded

the admonition, increased his speed, and passed the motorcycle but in doing so lost control of the automobile to some extent. It skidded from one side of the road to the other. Plaintiff requested defendant to decrease his speed, and to stop and let plaintiff out. This was disregarded. Defendant completely lost control of the automobile and it ran into an embankment on the left side of the road, turned over, and injured the plaintiff. The court concluded: "We think the facts as delineated are sufficient to require the submission to the jury of the question as to whether defendant was, under the circumstances, guilty of gross negligence, and their finding upon that question, based on conflicting evidence, will not be disturbed."

Larson v. Storm, 137 Neb. 420, 289 N. W. 792, contains the following: "In returning from the dance they followed Mr. Kalb's car, which was going about 35 to 40 miles an hour, but after several miles, when they reached the top of the hill, the defendant increased his speed, and ran around his uncle and went down the hill. The plaintiff complained, and she said she told him he was driving too fast, and should slow down; * * * she was frightened. She testified that the defendant turned his head, and kept looking at her as he crossed the bridge at 50 to 55 miles an hour; that he failed to make the slight turn at the end of the bridge, and lost control of the car * * *; that his speed was not slackened, and when the right front wheel hit the end of the projecting cement pipe the car bounced up, the door flew open, and she was thrown out onto the frozen ground and injured." This court said: "We have set out the substance of the evidence, which was conflicting, but on which the jury found against the defendant on the question of fact and returned a verdict for the plaintiff. The question of gross negligence is for the jury where the evidence relating thereto is conflicting, and from which reasonable minds might draw different conclusions."

In Sterns v. Hellerich, 130 Neb. 251, 264 N. W. 677, it is stated: "Adolph was driving the car at night on a curving road down a steep hill and approaching a narrow bridge, of which he was aware, at a speed of 50 miles an hour, when he had been warned that there was a dangerous place in the road ahead. He chose to disregard the warning and continued the reckless driving, with the disastrous results indicated. We think that, under the circumstances, the question of gross negligence was one for determination by the jury." See, also, Kovar v. Beckius, 133 Neb. 487, 275 N. W. 670; Sautter v. Poss, *supra*.

The conclusion is obvious and inescapable. The evidence is sufficient to sustain a finding of danger, visible to, known by, and made known to the driver of the truck, accompanied by a persistence of negligent driving of the truck, heedless of admonitions and protests, and without regard of the consequences that might be and were suffered by the guest. The proof permitted the jury to find an absence of slight care in the performance of the duty the driver of the truck owed to appellee. The evidence supports a finding of gross negligence.

The judgment of the district court should be and it is affirmed.

AFFIRMED.