DOROTHY THORPE, APPELLEE, V. JOHN D. ZWONECHEK, APPELLANT.

129 N. W. 2d 483

Filed July 3, 1964. No. 35685.

John E. Dougherty, for appellant.

Steinacher & Vosoba and Stanley Bartos, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

WHITE, C. J.

Plaintiff, a guest passenger, sues for personal injuries resulting from an automobile accident occurring when defendant lost control of his vehicle and crashed into a bridge abutment on a gravel county road about 3:30 a.m., on February 14, 1959. Trial was had to a jury resulting in a verdict for $25,000 from which the defendant appeals. The assignments of error are numerous and the ones discussed will be recited separately as they are reached in this opinion.

Substantially, the facts are not in dispute. The accident occurred at about 3:30 a.m., on February 14, 1959, in the valley bottom of two hills on a gravel road near De Witt, Nebraska. A maintainer had cleared recent snow from the road, and it was a clear night. The defendant Zwonechek's vehicle, driven by him, struck the corner of a bridge; and the plaintiff was thrown from the vehicle and sustained serious injuries and multiple fractures involving the pelvis and ribs.

The plaintiff and the defendant had been divorced for about 2 years at the time of the accident. Plaintiff was living in Iowa and, on defendant's invitation, came to the defendant's home at De Witt to settle a furniture dispute growing out of their divorce decree. At about 1 p.m., on the afternoon of February 13, 1959, they settled this dispute at the defendant's home, and the plain-

tiff was going to return to Lincoln enroute to her home in Winterset, Iowa. While at the defendant's home they each drank a small glass of wine, then traveled to Wilber where they each drank one highball and the defendant drank part of another one, and as they left the tavern the defendant bought a bottle of whiskey. They drove to Lincoln and the defendant took the plaintiff to a tavern where she had previously worked and to several other places where she visited friends. Except for a sip of a ten-cent beer at the tavern in Lincoln, neither of the parties drank anything during this period of time. They then went to the bus depot but the plaintiff was unable to leave Lincoln as no buses were scheduled at this time of the evening. At the suggestion of the defendant, they went to a "night club" west of Lincoln to kill time because a train was not immediately available. They arrived at the "night club" about 11 p.m., ordered set-ups, opened the fifth of whiskey the defendant had purchased in Wilber, each had two highballs, danced quite a few times with each other, and defendant called the depot and inquired about train departures. They left the "night club" about 1 a.m., went to an eating place where they had hamburgers and coffee, but nothing else to drink, and then drove to the train depot. It was about 2 a.m., when they arrived at the train depot, and plaintiff's train did not leave until about 10 a.m. Defendant prevailed upon the plaintiff to ride to De Witt with him so that he could restart his hydroelectric plant operation but promised to bring the plaintiff back to Lincoln in order to catch her train. At about 2:30 a.m., on February 14, 1959, the defendant drove south out of Lincoln on the paved highway and traveled generally at a speed of 55 miles per hour. Plaintiff testified that she noticed nothing unusual about the defendant's driving and that he was not under the influence of intoxicating liquor. The defendant turned off the paved highway and traveled west on a gravel road he called a "short-cut." Plaintiff watched the

speedometer, and the defendant kept driving at 55 miles per hour, the same speed at which he drove on the paved highway. About a mile west after the defendant had turned off the paved highway, and while driving on the gravel road, defendant's vehicle suddenly lurched violently almost off the shoulder and crosswise in the road. Plaintiff told the defendant to slow down, that the road was not in shape to drive on it at 55 miles per hour, and that the road "must have been icy." After this lurch the defendant continued to drive at 55 miles per hour and didn't drive straight. Plaintiff told the defendant to stop if he were sleepy, but he still didn't decrease his speed. Plaintiff again told the defendant to slow down because the road was so bad. Defendant admits that he did not slow down after plaintiff's protests about the speed at which he was driving, that his reflexes may not have been what they should have been, that the road had thawed but was frozen at the time of the accident, that the plaintiff told him to stop if he were sleepy, and that he might have been sleepy. The accident happened at about 3:30 a.m., about 5 or 6 miles west of where the defendant turned off the highway, and as they approached a bridge in a valley between two hills. The defendant hit ruts east of the bridge, lost control of his car, and there was a violent lurch and a "horrible crash" into the east bridge abutment. Plaintiff was thrown out of the car, was on her back in the road, heard steam fizzing, and thought she was going to die. She was confined to the hospital for about 2 months, suffered from severe shock, and was in critical condition due to numerous fractures and internal injuries. Plaintiff suffered continuing pain of the most severe type that limited treatment, and she returned to the hospital a year later for removal of bone encroaching on the bladder and vagina. In spite of several attempts, plaintiff is unable to work as a waitress, her usual occupation, and is now receiving state rehabilitation allotments.

Defendant told the sheriff at the time of the accident that he fell asleep. He further testified that because of the thawing during the day and the freezing at night there were ruts in the road and that driving was confined to the center of the gravel following the frozen tracks carved out during the thawing period. His exact testimony in this respect is as follows: "Q All right. What, if anything, happened in that four mile period before the accident happened with reference—did it— was the car all over the road, or tell us what it was doing. A No, I said that I did make a little mistake here, I said that it was soft on the shoulder, but it wasn't, there were—*it had, the road, it had thawed the day before, and the road was frozen in the evening* and, so, anybody that had driven anywhere except on the path right down the middle where everybody took it, except where they come to the top of hills, there was—they'd sunk in and there were some ruts and that's what I hit, what threw me off. * * * Q Now as you come—just tell us in your own words what happened, as you came up there to that bridge, if you remember the bridge, or whatever it is, just tell in your own words without any prompting from me. A Well, I'll admit that I was—that I was sleepy, and, as I say, I know that there were ruts east of the bridge, and as I said before, these gravel roads they always take the center except when they come to the top of a hill, well this is the same sort of a deal, all of them drove in the center because you could see and on approaching the bridge from the east side, and somebody had driven while it was, the day before, when it had thawed somebody had driven on the side a little bit and made ruts, and that's what I hit. * * * Q I'm not asking you what you have done, I am asking if you remember of dozing off or anything like that this particular night? A Well, I don't remember dozing way off, but I must have been sleepy." (Emphasis supplied.)

Defendant argues the insufficiency of the evidence

under our previous decisions to sustain a finding of gross negligence. No contention is made in this case as to contributory negligence of the plaintiff. An issue concerning gross negligence under our guest statute, section 39-740, R. R. S. 1943, must be decided on the particular facts and circumstances of each case. Sautter v. Poss, 155 Neb. 62, 50 N. W. 2d 547; Kiser v. Christensen, 163 Neb. 155, 78 N. W. 2d 823; Werner v. Grabenstein, 165 Neb. 231, 85 N. W. 2d 297. If the evidence is conflicting and reasonable minds could draw different conclusions, it is for the jury. But, when the evidence is resolved most favorably to the existence of gross negligence, and thus the facts are determined, the inquiry of whether or not they support a finding of gross negligence is one of law for the court. Ottersberg v. Holz, 159 Neb. 239, 66 N. W. 2d 571; Morris v. Erskine, 124 Neb. 754, 248 N. W. 96; Lincoln v. Knudsen, 163 Neb. 390, 79 N. W. 2d 716; Werner v. Grabenstein, *supra*. Admittedly, the attempt to color match cases in this area is difficult. However, decisions of this court have given significance to certain elements that should be found to justify a conclusion of gross negligence. In discussing this matter, our court said in Werner v. Grabenstein, *supra*, as follows: "In Thurston v. Carrigan, 127 Neb. 625, 256 N. W. 39, it is said: 'In the cases of Morris v. Erskine, supra (124 Neb. 754), Gilbert v. Bryant, 125 Neb. 731, Swengil v. Martin, 125 Neb. 745, and Sheehy v. Abboud, 126 Neb. 554, wherein the guest was permitted a recovery, the imminence of danger was apparent to the driver and he was cautioned by the guest, but persisted in his negligent driving. The facts in each of those cases disclose that the driver was at least heedless of the consequences which might ensue by his reckless operation of the car, which involved, not only the rate of speed, but included other conditions which enhanced the peril and which were open to the driver.' "

We note that the defendant driver in the present case was cautioned in three areas. He was correctly told

that his speed was too fast, was warned of the condition of the road, and his attention was directed toward his sleepy condition. The near accident shortly before should have jolted him into reality. His own testimony completely confirms the danger of the situation. He had knowledge of the imminence of danger if he persisted in driving in the frozen narrow path and ruts of the gravel road at the speed of 55 miles per hour. He had abundant opportunity to desist and he was heedless of the repeated warning and of the consequences of his manner of driving. The presence of imminence of danger visible to, known by, or made known to a driver, together with a persistence in negligence apparently heedless of the consequences are factors given material, if not controlling, significance in Gummere v. Mudd, 139 Neb. 370, 297 N. W. 622; Paxton v. Nichols, 157 Neb. 152, 59 N. W. 2d 184; and Born v. Estate of Matzner, 159 Neb. 169, 65 N. W. 2d 593. There was no other car or moving object involved in the present case, and no excuse of any nature appears for the defendant to lose control of his vehicle and strike a plainly visible bridge abutment. We think the evidence in this case when considered as a whole is ample to justify submission of the question of gross negligence to the jury.

Defendant next complains of instruction No. 8 given by the trial court which said in part: "You are instructed that the law requires the driver of a motor vehicle to operate it at such a speed and have it under such control that he can by exercise of due care avoid accidents and injuries to others or passengers within the motor vehicle."

There was no other vehicle, driver, or pedestrian involved in this accident. Defendant complains that it places the burden of complete control on him and cites Ficke v. Gibson, 153 Neb. 478, 45 N. W. 2d 436. The instruction condemned in that case was one that required "complete control." The instruction under attack does not so command. Its fair import is simply reasonable

control as apparent from the language "such control that he can by exercise of due care avoid accidents." There is no merit to this contention.

Defendant attacks instructions Nos. 11 and 12 as to the measure of damages. These instructions are too long to be quoted in this opinion. They correctly and adequately state the measure of damages and are supported by the evidence. Defendant contends that the court required the jury to accept the figures as to hospital and medical expenses, which were in evidence only by virtue of a stipulation, as to what amounts the witnesses would testify if called. The court did not require it to accept the figures in the stipulation but told the jury it could find only "such fair and reasonable sums as she has paid or incurred." The jury, under this instruction, could disregard all or any portion of the stipulated testimony. If counsel desired a more specific instruction in any particular area of damages, he should have so requested. See, Stahlhut v. County of Saline, 176 Neb. 189, 125 N. W. 2d 520. Defendant cites Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643. What was said therein referred to a situation where no damage instruction of any nature was given. In the present case, the court did instruct the jury as to the various elements of damage sustained by the evidence, both past and future, and the effect of the complaint made is that it could have been more detailed. There were no requested instructions as to damages from the defendant. The defendant's claim that there is no evidence to sustain a finding of future pain and suffering is without merit. It may be fairly said that this record could lead to no other conclusion than that the plaintiff's injuries are permanent in character and will result, with reasonable medical certainty, in future pain and suffering. The medical testimony, especially by Dr. Elias, directly supports this conclusion. The court instructed the jury that it could allow only such future damages *"as have been shown by the evidence, with*

*reasonable certainty,* \* \* \*." Further, the court, as to earnings, submitted only that which "will fairly and reasonably compensate her for loss of earnings and tips, if any \* \* \* up to the present time." In the light of the undisputed evidence that the plaintiff has tried reemployment as a waitress several times and is unable to perform the duties incident thereto, and the fact she is employed in a rehabilitation job supplemented by state aid, in this respect, the error if any was in favor of the defendant and he cannot be heard to complain.

Defendant attacks instruction No. 12 relating to present worth. It reads as follows: "You are instructed if you find that the plaintiff is entitled to recover for monetary losses, if any, which will be sustained in the future as a result of the injuries sustained, the amount you find said plaintiff should recover for such loss should be reduced to its present worth by taking into consideration the earning power of money from the present time to the time it is found that the actual loss will be sustained and only the present worth thereof should be included in your verdict."

Defendant complains that no formula is given for determining present worth and that future damages are not limited to those occurring with reasonable certainty. Instructions must be construed together and instruction No. 11, preceding this one, told the jury that future damages could not be allowed unless with reasonable certainty. There is no merit to this contention.

The instruction as to present worth was correct and is without error. An instruction which informs the jury of the nature of present worth, without fixing any rate of interest or rigid formula, and requires it to reduce future damages to present worth, is proper. An example is not essential. A jury may be entrusted to apply its common sense and knowledge to the actual ascertainment of present worth. Jacobsen v. Poland, 163 Neb. 590, 80 N. W. 2d 891; Patras v. Waldbaum, 170 Neb. 20, 101 N. W. 2d 465. Defendant cites Patras v.

Waldbaum, *supra*. Patras condemned the giving of specific discount or interest rate, did not require the court to define a "method" of arriving at the amount but specifically stated: "* * * a fixed formula should not be given which the jury is required to follow. It should receive only an explanatory or illustrative one to aid it in arriving at its verdict." In the present case, no fixed formula was given and none was required. The instruction given was consistent with and followed the holdings in both Jacobsen v. Poland, *supra,* and Patras v. Waldbaum, *supra*. The clear import of the Jacobsen case was to point out the difficulties and condemn the attempt to set out a precise example or rigid mathematical formula to determine present worth. The contention of error in this instruction is without merit.

Defendant complains of instruction No. 5 defining gross negligence because it includes the language, "* * * but not necessarily extending to wanton or wilful or intentional disregard for the guest's safety." He claims this corrupts the basic definition given in Morris v. Erskine, *supra,* and that our court has not defined gross negligence including any such language in any case. Quite to the contrary, this exact language was used and approved in Gilbert v. Bryant, 125 Neb. 731, 251 N. W. 823; Sterns v. Hellerich, 130 Neb. 251, 264 N. W. 677; and Hamblen v. Steckley, 148 Neb. 283, 27 N. W. 2d 178. This contention is without merit.

Defendant complains of instruction No. 2 which in its first subdivision tells the jury that it must find the defendant guilty of negligence, and then in subdivision No. 2 of the same instruction, tells it "that such negligence of said defendant, if any, was gross negligence as hereinafter defined," and then in subdivision No. 3 tells the jury that such gross negligence must be the proximate cause of the accident, etc. The defendant says that this permits the jury to return a verdict based on a finding of ordinary negligence. It is obvious that the plain meaning and import of the whole instruction

was to require the proving of gross negligence and not mere ordinary negligence. The language here used served clarity and to the defendant's benefit emphasized the necessity for reaching a finding of a greater negligence than ordinary negligence. Gross negligence was properly defined in another instruction. There is no merit to this contention.

Defendant complains of certain questions asked by plaintiff's counsel on voir dire examination of the jury panel. Assuming that the questions were objectionable, defendant fully examined the prospective jurors as to the same subject matter covered in the alleged objectionable questions. At no time did he challenge any of the jurors for cause or claim their disqualification. We recently said in State v. Eggers, 175 Neb. 79, 120 N. W. 2d 541, as follows: "In the instant case, the defendant was represented by counsel who knew the proper method of raising the question of disqualification of jurors. For his own reasons he elected not to do so and passed the jurors selected for cause. By passing the jurors for cause, the defendant waived any objection to their selection as jurors. The right to challenge jurors for disqualification is a right which may be waived even in a capital case. Bufford v. State, 148 Neb. 38, 26 N. W. 2d 383. Defendant is not permitted to change his mind after an unfavorable verdict." We find no merit to this contention.

Lastly, defendant contends prejudicial error in closing argument of plaintiff's counsel. This is because at one point counsel asked the jurors what plaintiff's pain and suffering would be worth to them. Defendant cites an Iowa case, Russell v. Chicago, R. I. & P. R. R. Co., 249 Iowa 664, 86 N. W. 2d 843, 70 A. L. R. 2d 927, in which the appellate court held it was not error. for the trial court to grant a new trial as to such statements in closing argument. In the present case, the above question or remark is so closely interwoven with discussion as to what a reasonably prudent person would award for

such damages that we fail to see any prejudicial error. There is no yardstick by which pain and suffering may be accurately measured and yet counsel is entitled to argue such damages. The jurors must be guided by the evidence as interpreted by their own observation, experience, and sense of fairness and right. Chicago & N. W. Ry. Co. v. Candler, 283 F. 881, 28 A. L. R. 1174.

There is no contention here that the verdict was excessive and no error was assigned in that respect. The evidence clearly supports the verdict. The injuries are serious, permanent, and undisputedly disabling. Therefore, we do not think we should reverse the judgment on account of claimed error in the argument as to damages. See, Chicago, R. I. & P. Ry. Co. v. Gunn, 112 Ark. 401, 166 S. W. 568, Ann. Cas. 1916E 648; Church v. Larned, 206 Mich. 77, 172 N. W. 551.

This case was fully and fairly tried, the jury was properly instructed, and we can find no prejudicial error in the record. The judgment of the trial court is correct and is affirmed.

AFFIRMED.